JOURNAL ENTRY AND OPINION
{¶ 1} Appellant Aamir Beasley appeals his felonious assault and domestic violence convictions. After a thorough review of the record and the arguments, and for the reasons set forth below, we affirm.
 {¶ 2} The grand jury indicted appellant on three counts. Count one alleged felonious assault, under R.C. 2903.11(A)(1); count two alleged domestic violence, under R.C. 2919.25(A); and count three alleged intimidation of a witness, under R.C. 2921.04(B). At the end of the jury trial on October 4, 2006, appellant made a Crim.R. 29 motion for acquittal, which was denied. The jury *Page 3 
convicted appellant on counts one and two, but acquitted him on count three. The trial court sentenced him to three years in prison.
 {¶ 3} The facts that gave rise to this appeal occurred on April 26, 2006. On that date, appellant accused his girlfriend, Marcie Dentler ("the victim") of giving him gonorrhea, and a physical struggle ensued. Appellant hit the victim's face, grabbed her hair, and kicked her for 20 minutes.
 {¶ 4} The victim went to the hospital for her injuries. She told Dr. John Duldner that her boyfriend had assaulted her because of the sexually-transmitted disease accusation. Dr. Duldner observed the victim's injuries, which included abrasions, minor cuts and bruises on her face, a bleeding ear and perforated ear drum, periorbital ecchymosis, and cervical muscle strain. Dr. Duldner testified that these injuries were the result of an assault, and that a perforated eardrum can reduce hearing by 50 percent for weeks to months, with the possibility of permanent hearing loss. According to the victim, she lost her hearing for about one week.
 {¶ 5} On April 28, 2006, Officer Ambrose took the victim's written statement. The officer observed visible injuries, including a swollen nose and abrasions on her forehead, neck, and cheek. The victim identified appellant as her attacker. She stated, "[appellant] came to our house and confronted me * * * he had said I gave him an STD[1] and proceeded to hit me in my face. * * * He *Page 4 
grabbed me by the hair and drug me to the house. He then proceeded to hit and kick me for * * * at least 20 minutes. He busted my eardrum and left me to clean up myself. Then I went to the hospital."
 {¶ 6} In August 2006, the victim indicated that she had made a false police report concerning this incident. Because of this, she was appointed an attorney to represent her. The victim was granted full immunity for her testimony.
 {¶ 7} The court called the victim as a court's witness and allowed the state to cross-examine her. The victim testified that she made up the story, and appellant did not assault her. Instead, she claimed that one of appellant's ex-girlfriends hit her on the back of her head, and the ex-girlfriend's 16-year-old male cousin attacked her.
 {¶ 8} Appellant's neighbor, Maria Gregg, testified that appellant admitted to her that he had assaulted the victim. Gregg also saw the victim's physical injuries, which included a black eye and bruises.
 {¶ 9} Appellant brings this appeal, asserting five assignments of error for our review.
 Batson Challenge {¶ 10} "I. The trial court committed reversible error by refusing to entertain defendant's Batson challenge to the state's removal of an African-American juror." *Page 5 
 {¶ 11} Appellant argues that the trial court erred when it refused to entertain his Batson challenge. We disagree.
 {¶ 12} In Batson v. Kentucky (1986), 476 U.S. 79, 106 S.Ct. 1712,90 L.Ed.2d 69, the United States Supreme Court created a test to determine when a peremptory challenge was impermissibly based on race. When defense counsel objects to the dismissal of jurors based on race ("aBatson challenge"), a prima facie case of purposeful discrimination must first be established. To make a prima facie case, defendant must show that he and the potential juror are members of a "cognizable racial group." Counsel must also show that the facts and circumstances raise an inference that the prosecutor used the challenges to exclude jurors because of their race. If the judge determines that a prima facie case has been made, the state must provide a race-neutral reason for dismissing the jurors. Finally, the judge must then determine if the defendant established purposeful discrimination. Id. at 96-98.
 {¶ 13} The trial court is in a "better position to evaluate the credibility questions * * * in cases of juror strikes." The appellate court cannot reverse unless it finds that "the court acted in a clearly erroneous manner." State v. Brown, Cuyahoga App. No. 84059,2004-Ohio-6862.
 {¶ 14} Appellant is African-American. During voir dire, an African-American prospective juror (No. 6) indicated that she had previously been a victim of domestic violence. As a result of the state's questioning, it was *Page 6 
revealed that she had forgiven her abuser and tried to drop the charges, but the judge would not allow it. Subsequently, the state used a peremptory challenge to dismiss this prospective juror.
 {¶ 15} The state also questioned an African-American prospective juror (No. 17), who revealed that his son was incarcerated for domestic violence. The state also used a peremptory challenge to excuse this prospective juror.
 {¶ 16} Defense counsel made a Batson challenge to the dismissal of these two prospective jurors. Subsequently, the state explained that it excused juror No. 17 because it felt he could not be impartial because of his son's incarceration for domestic violence. The state explained that it excused juror No. 6 because she was a victim of domestic violence. The judge found that there was no purposeful discrimination.
 {¶ 17} Here, defense counsel made a Batson challenge on two of the dismissed jurors. Without waiting for the court to rule on whether the defendant had made a prima facie case of discrimination, the state offered race-neutral reasons. "Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant has made a prima facie showing becomes moot." Hernandez v. New York (1991), 500 U.S. 352, 359,111 S.Ct. 1859, 1866, 114 L.Ed.2d 395. *Page 7 
 {¶ 18} It was not "clearly erroneous" for the judge to determine that there was no purposeful discrimination. Juror No. 17 was dismissed because his son was incarcerated for domestic violence, and juror No. 6 was dismissed because of her past as a victim of domestic violence. The state's proffered reasons were clearly race-neutral. Accordingly, appellant's first assignment of error is overruled.
 Insufficient Evidence {¶ 19} "II. The conviction for felonious assault is not supported by sufficient evidence because the element of serious, physical harm was not satisfied."
 {¶ 20} Appellant argues that his conviction for felonious assault was not supported by sufficient evidence. More specifically, he argues that there was insufficient evidence to establish the element of physical harm. We disagree.
 {¶ 21} In State v. Jenks (1991), 61 Ohio St.3d 259, the Ohio Supreme Court re-examined the standard of review to be applied by an appellate court when reviewing a claim of insufficient evidence:
 {¶ 22} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, *Page 8 
any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979],443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)" Id. at paragraph two of the syllabus.
 {¶ 23} More recently, in State v. Thompkins, 78 Ohio St.3d 380,1997-Ohio-52, 678 N.E.2d 541, the Ohio Supreme Court stated the following with regard to "sufficiency" as opposed to "manifest weight" of the evidence:
 {¶ 24} "With respect to sufficiency of the evidence, `sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.' Black's Law Dictionary (6 Ed.1990) 1433. See, also, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson (1955),162 Ohio St. 486, 55 Ohio Op. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process.Tibbs v. Florida (1982), 457 U.S. 31, 45, 102 S.Ct. 2211, 2220,72 L.Ed. 2d 652, 663, citing Jackson v. Virginia (1979), 443 U.S. 307,99 S.Ct. 2781, 61 L.Ed. 2d 560." Id. at 386-387.
 {¶ 25} Finally, we note that a judgment will not be reversed upon insufficient or conflicting evidence if it is supported by competent credible *Page 9 
evidence which goes to all the essential elements of the case. Cohen v.Lamko (1984), 10 Ohio St.3d 167, 462 N.E.2d 407.
 {¶ 26} Where there is substantial evidence upon which the trier of fact has based its verdict, a reviewing court abuses its discretion in substituting its judgment for that of the jury as to the weight and sufficiency of the evidence. State v. Nicely (1988), 39 Ohio St.3d 147. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to determine. State v. DeHass
(1967), 10 Ohio St.2d 230.
 {¶ 27} Appellant was convicted of felonious assault under R.C.2903.11(A) (1), which provides that, "no person shall knowingly * * * cause serious physical harm to another * * *." Under R.C. 2901.01(A)(5), "`serious physical harm to persons' means * * * any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity."
 {¶ 28} It is clear that the element of physical harm has been met. The victim told police that appellant hit her, grabbed her hair, dragged her out of the house, and kicked her for 20 minutes. She also told Dr. Duldner that appellant had assaulted her. Dr. Dulner, Officer Ambrose, and her neighbor observed her injuries. Medical records show that she lost her hearing for at least one week. It is clear that loss of hearing is a temporary, substantial incapacity. *Page 10 
 {¶ 29} After viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Accordingly, appellant's second assignment of error is overruled.
 Rulings on Objections {¶ 30} "III. The trial court deprived defendant of a fair trial by ignoring twenty-two objections made by defense counsel in the presence of the jury."
 {¶ 31} Appellant argues that the trial court erred when it ignored defense counsel's objections at various points in the trial. More specifically, he argues that, by not issuing rulings, the court interfered with appellant's right to a fair trial. We find this argument to be without merit.
 {¶ 32} This court has found that, when the record shows that a trial judge interrupts or ignores questions from a defendant, the fairness of the trial might be tainted. State v. Ward, Cuyahoga App. No. 81282, 2003-Ohio-3015. A thorough review of the record shows that the trial judge did not ignore appellant's objections; therefore, he did not interfere with appellant's right to a fair trial. All of defense counsel's objections were either overruled or sustained.
 {¶ 33} Even if a trial judge does not use the words "overruled" or "sustained," there is a presumption that the objections are overruled.State v. Harrison (May 12, 1993), Hamilton App. No. C-920422. Here, even when the trial judge failed to use the exact words "overruled" or "sustained," he still *Page 11 
addressed each objection. For example, in response to a defense objection, the judge responded, "[h]e can answer that. Go ahead." That clearly indicates that the judge overruled the objection. In another example, after defense counsel objected "this goes well beyond the scope of cross," the judge answered, "it goes to the relationship."
 {¶ 34} Nothing in the transcript supports appellant's contention that the judge ignored his counsel's objections. Accordingly, appellant's third assignment of error is overruled.
 Evidence of Religious Beliefs {¶ 35} "IV. The trial court deprived defendant of a fair trial by allowing the prosecutor to ask multiple questions about the Islamic religion in front of the jury."
 {¶ 36} Appellant argues that the trial court erred when it allowed the prosecutor to ask the victim questions about religion. We disagree.
 {¶ 37} Under Evid.R. 610, evidence of a witness' religious beliefs is not admissible to show that those beliefs impair or enhance her credibility. Although defense counsel objected, the trial court allowed the prosecutor to ask the victim the following questions:
 {¶ 38} "Q: So, I take it you are Muslim.
 {¶ 39} "Q: Since when did you become Muslim?
 {¶ 40} "Q: And, can you describe a little bit of the Muslim religion to me? *Page 12 
 {¶ 41} "Q: In the Muslim religion, how are women viewed?
 {¶ 42} "Q: Is there a reason you wear [this head covering]?
 {¶ 43} "Q: So you're required to wear that as part of your religion?"
 {¶ 44} While religion cannot be used for credibility purposes, it can be used to show bias. Redman v. Watch Tower Bible Tract Soc. ofPenn. (1994), 69 Ohio St.3d 98, 99, 630 N.E.2d 676, 677. Clearly, the state cannot use the existence of religious beliefs to prove credibility. However, in this case, the state asked the victim these religious questions to show bias. The state's theory was that appellant (as the victim's boyfriend), as the rule-maker in the relationship, was trying to force the victim to drop the charges and/or refuse to testify against him. By asking the victim how women are viewed in her religion, the state was merely attempting to show that the victim was biased toward appellant. Accordingly, appellant's fourth assignment of error is overruled.
 Impeachment of Witness {¶ 45} "V. The trial court deprived defendant of a fair trial by allowing the prosecutor to impeach its own witness and created cumulative error when reviewed with all of the previous assignments of error."
 {¶ 46} Appellant argues that the trial court erred when it allowed the prosecutor to impeach its own witness. This argument is without merit.
 {¶ 47} Under Evid.R. 607(A), "the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only *Page 13 
upon a showing of surprise and affirmative damage." Therefore, in order for the state to properly attack its own witness, it would have to have shown surprise and affirmative damage. Appellant argues that there was no surprise in the victim's testimony because she had provided a written statement, weeks earlier, claiming that the police report she had filed was false. However, Evid.R 607 does not govern this situation.
 {¶ 48} Under Evid.R. 614(A), "the court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called." When a witness is called under Evid.R. 614, Evid.R. 607 is inapplicable; no showing of surprise is required. State v. Schultz, 11th Dist. No. 2003-L-156,2005-Ohio-345.
 {¶ 49} Calling "court witnesses" is entirely at the discretion of the court. State v. Adams (1980), 62 Ohio St.2d 151, 404 N.E.2d 144. In Ohio, the trial court may call a court's witness if the court feels it would help ascertain the truth, and there is an indication that the witness's testimony will contradict her prior police statement. Id. Because it was clear that the victim's testimony would clearly conflict with a prior statement she made to police, the trial court said, "we're in the interests of justice here * * * let's hear the evidence and let the jury sort out the truth. Therefore, both parties may cross-examine and impeach the witness." *Page 14 
 {¶ 50} Here, the court properly identified the victim as a court's witness. At the time of trial, the victim was married to appellant and pregnant with his child. She informed the doctor at the hospital that her boyfriend was her attacker. She made a statement to the police on April 28, 2006, in which she identified her boyfriend as her attacker. On August 16, 2006, the victim wrote the judge a letter in which she recanted the entire story (making it clear that her testimony would conflict with her previous statement). At trial, she recanted her story, telling the court that someone else had assaulted her, and she indicated that her mother (who disliked appellant) had made her file a police report. Because the victim was properly identified as a court's witness, the prosecutor was permitted to impeach her. Accordingly, appellant's fifth assignment of error is overruled.
 {¶ 51} Judgment is hereby affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 15 
COLLEEN CONWAY COONEY, J., and MELODY J. STEWART, J., CONCUR.
[1] Sexually transmitted disease. *Page 1