**The STATE of Ohio, Appellee,**

v.

**CLAY, Appellant.**

[Cite as *State v. Clay,* 181 Ohio App.3d 563, 2009-Ohio-1235.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 90453.

Decided March 19, 2009.

</div>

William D. Mason, Cuyahoga County Prosecuting Attorney, and Mary McGrath, Assistant Prosecuting Attorney, for appellee.

Robert Tobik, Chief Public Defender, and Cullen Sweeney, Assistant Public Defender, for appellant.

SEAN C. GALLAGHER, Presiding Judge.

{¶ 1} Appellant, Mark Clay, appeals his conviction on one count of felony domestic violence under R.C. 2919.25, which included specifications of two prior convictions for domestic violence. Following a jury trial, Clay was found guilty. He was sentenced to community-control sanctions. For the reasons outlined below, we affirm his conviction.

{¶ 2} Nancy Hamann, the victim, and Clay originally met in Florida, where they lived together following the death of Hamann's common-law husband. After Hurricane Charlie, both Hamann and Clay relocated to an apartment at 6010

Biddulph Road, No. 2, in Brooklyn, a Cleveland suburb, where the incident now on appeal occurred.

{¶ 3} On February 25, 2007, in the evening, Hamann was in the apartment she shared with Clay. Hamann had been drinking, and the two got into an argument that became physical. Hamann left the apartment and went to a grocery store, where she called Colleen Gallagher, a local city council member. Hamann had spoken with Councilwoman Gallagher on previous occasions regarding domestic violence. Hamann told Gallagher that her boyfriend Mark had kicked her in the face and that she was bleeding. After speaking with the victim, Gallagher called the police. The police located Hamann in the apartment parking lot.

{¶ 4} Upon their arrival, the police saw Hamann, who was hysterical, crying, and screaming. Hamann told police that Clay had kicked her in the face. She identified Clay as her boyfriend, a fact known to the police officer from prior "domestic calls" at the residence involving the two. Clay was questioned and taken into custody because of the statements made by Hamann and the red mark observed on Hamann's face, which police later photographed.

{¶ 5} At the station, Hamann signed a short written statement describing the assault. She stated that Clay had kicked her in the head with a steel-toed boot. She also indicated that Clay had threatened to kill her and that she wanted to prosecute Clay for domestic violence.

{¶ 6} Clay appeals, advancing eight assignments of error for our review.

I. The trial court erred in permitting the state to impeach its own witness with a prior inconsistent statement and in admitting that hearsay statement as substantive evidence.

{¶ 7} In this assigned error, Clay complains that the trial court improperly allowed the prosecutor to cross-examine Hamann with her prior written statement without showing surprise or affirmative damage as required by Evid.R. 607.

{¶ 8} Prior to trial, the prosecutor was aware that Hamann was backing away from her original statement. During voir dire and during his opening statement, the prosecutor described Hamann as a reluctant witness. He told the jury they might not hear Hamann describe events as they actually occurred.

{¶ 9} At trial, Hamann distanced herself from her earlier written statement and claimed that she couldn't remember many of the specific details regarding the assault. She testified that Clay had tried to pull the phone away from her and that when she pulled back, it hit her in the face, causing the red mark, but that she was not hurt. In addition, Hamann insisted that Clay was not her boyfriend and also tried to minimize any economic connections between the two. She tried to assert that they were just living together but were not involved in a sexual relationship or cohabitating as family or household members.

{¶ 10} Throughout her testimony, Hamann was evasive and claimed that she was confused. She claimed that she couldn't remember specific details about the incident or her statements to police.

{¶ 11} On direct examination, the prosecutor marked Hamann's original written statement as an exhibit; then, with court approval, he had it submitted to the jury as substantive evidence, over the objection of the defendant.

{¶ 12} Clay maintains that it was improper for the state to impeach its own witness without showing surprise and affirmative damage. Further, Clay maintains that the unsworn written statement was hearsay and should not have been admitted as substantive evidence.

{¶ 13} First, we must consider whether the prosecutor could use the prior inconsistent statement to impeach his own witness under Evid.R. 607(A). The rule states as follows:

Rule 607.   Impeachment

(A) Who May Impeach.

The credibility of a witness may be attacked by any party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage. This exception does not apply to statements admitted pursuant to Evid. R. 801(D)(1)(a), 801(D)(2), or 803.

{¶ 14} Hamann's conduct affirmatively damaged the state's case, but the rule also requires surprise. It is clear from the record that the prosecutor was aware of Hamann's change of heart prior to trial. Therefore, surprise was not evident; thus, Evid.R. 607(A) was not available to the state.

{¶ 15} The state argues that the court eventually declared Hamann to be a court witness and that, as a result, the cross-examination was proper. Evid.R. 614(A) states the following:

Rule 614.   Calling and Interrogation of Witnesses by Court

(A) Calling by court.

The court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called. Throughout the direct examination, the prosecutor repeatedly asked the court to declare Hamann a court witness pursuant to Evid.R. 614(A). The court repeatedly denied these requests but at one point acknowledged that the prosecutor was essentially already cross-examining Hamann. Clearly the prosecutor could have properly cross-examined Hamann if the court had declared Hamann to be a court witness. Because these requests were denied, Evid.R. 614(A) is not applicable either.

{¶ 16} We find the state's reliance on *State v. Beasley*, Cuyahoga App. No. 88989, 2007-Ohio-5432, 2007 WL 2949521, and *State v. Wilbon*, Cuyahoga App. No. 82934, 2004-Ohio-1784, 2004 WL 743881, to be misplaced. In *Beasley*, the trial court expressly called the witness-victim as a court witness under Evid.R. 614(A). Here, the trial court repeatedly denied the prosecutor's request to invoke Evid.R. 614(A). Similarly, in *Wilbon*, the trial court called the victim-witness as a court witness under Evid.R. 614(A). The issue in *Wilbon* was the trial judge's treatment of that witness once called to the stand, which is not the situation we have in this case.

{¶ 17} Clay also argues that the unsworn written statement was inadmissable hearsay. We agree. However, the trial court admitted the statement as substantive evidence in the case against Clay.

{¶ 18} Although we find the cross-examination of Hamann by the prosecutor and the admission of the prior written statement improper, we must still consider whether Clay was prejudiced by these errors.

{¶ 19} Hamann's statements to police officers at the scene and to Colleen Gallagher were admissible. Those statements were essentially the same as those offered in her subsequent written statement. These statements qualified as excited utterances under Evid.R. 803(2), and thus were admissible.

Rule 803. Hearsay Exceptions; Availability of Declarant Immaterial

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

* * *

(2) Excited utterance.

A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

Gallagher described Hamann as hysterical when she called and stated that her boyfriend had kicked her in the face and that she was bleeding. The officer testified that Hamann was hysterical, crying, and screaming when he arrived. Hamann told the officer that her boyfriend had kicked her in the face.

{¶ 20} We agree with Clay that it was improper for the state to cross-examine Hamann and that it was error to admit the written statement as substantive evidence. Nevertheless, we find no reversible error because Hamann's written statement was cumulative evidence. See *State v. Travis*, 165 Ohio App.3d 626, 2006-Ohio-787, 847 N.E.2d 1237. Clay's first assigned error is overruled.

II. Appellant's conviction for domestic violence is not supported by sufficient evidence as required by state and federal due process.

III. Appellant's domestic violence conviction is against the manifest weight of the evidence.

{¶ 21} In his second and third assigned errors, Clay argues that there was no evidence that Hamann suffered physical harm or that Hamann and Clay were household members as defined by statute.

{¶ 22} When an appellate court reviews a record upon a sufficiency challenge, " 'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Leonard,* 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

{¶ 23} In reviewing a claim challenging the manifest weight of the evidence, the question to be answered is whether " 'there is *substantial* evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt.' (Emphasis sic.) *State v. Getsy* (1998), 84 Ohio St.3d 180, 193–194, 702 N.E.2d 866. In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury ' "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." ' *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717." (Citation omitted.) *Leonard,* ¶ 81.

{¶ 24} "Physical harm" is defined as any injury, illness, or other physiological impairment, regardless of its gravity or duration. R.C. 2901.01(A)(3).

{¶ 25} In *State v. Pallai,* Mahoning App. No. 07 MA 198, 2008-Ohio-6635, 2008 WL 5245576, the court explained that a slap, even one that does not result in lingering evidence of physical trauma, fits within the definition of physical harm. In *Pallai,* there was evidence that the defendant hit his fiancée across her left ear with his hand while in an angered state, which was sufficient to support the finding that he knowingly caused her physical harm.

{¶ 26} In this case, when police arrived on the scene they observed a red mark on Hamann's left cheek. Police photographed the mark, and the pictures were admitted as state's exhibits Nos. 2 and 3. Hamann's face was described by one officer as being "a little puffy, red and having two line marks." Hamann told Gallagher that she had been kicked in the face and was bleeding. Upon a review of the evidence presented in this case, we find that the state established "physical harm."

{¶ 27} Likewise, the state established that Hamann and Clay were household members. To prove that they were household members, the state had to establish that Hamann and Clay were cohabiting. Despite Hamann's attempts to downplay her relationship with Clay, on both the romantic and economic basis, Hamann did admit that Clay was paying most of the bills. In direct response to a question about "living there" and "contributing to the household," Hamann admitted, "Yes, but he was contributing a whole lot more than me, being unemployed." Hamann later admitted: "A lot of times a woman lives with a man, he doesn't pay bills, he pays her rent. In my position I do contribute to the household income what I can. It may not be as much as him."

{¶ 28} Further, Officer Shane Phillips testified that Hamann identified Clay as her "boyfriend" on the scene. In addition, Officer Phillips indicated that even Clay, on a prior occasion, identified Hamann as his "girlfriend."

{¶ 29} "The offense of domestic violence, as expressed in R.C. 2919.25(E)(1)(a) and related statutes, arises out of the relationship of the parties rather than their exact living circumstances. The essential elements of cohabitation are (1) sharing of familial or financial responsibilities and (2) consortium." *State v. Williams* (1997), 79 Ohio St.3d 459, 683 N.E.2d 1126. "Possible factors establishing shared familial or financial responsibilities might include provisions for shelter, food, clothing, utilities, and/or commingled assets. Factors that might establish consortium include mutual respect, fidelity, affection, society, cooperation, solace, comfort, aid of each other, friendship, and conjugal relations. These factors are unique to each case and how much weight, if any, to give to each of these factors must be decided on a case-by-case basis by the trier of fact." Id. at 464, 683 N.E.2d 1126.

{¶ 30} Here it was unnecessary for the state to establish a sexual relationship between Hamann and Clay to support a conviction for domestic violence. It is clear they were sharing the same household and were cohabiting by sharing financial responsibilities. Accordingly, Clay's second and third assigned errors are overruled.

IV. The trial court erred in admitting prior bad acts evidence.

{¶ 31} Under this assignment of error, Clay argues that it was improper for Gallagher to testify about prior instances of domestic violence involving Clay and Hamann. Further, Clay argues that Officer Phillips improperly testified that he had responded to "various altercations" involving Clay and Hamann on prior occasions. Finally, Clay asserts that it was error to allow Hamann to testify about prior threats made to her by Clay.

{¶ 32} With respect to Gallagher's statement, she did not identify Clay as the prior offender and merely explained that she had had conversations with Hamann about domestic violence.

{¶ 33} The statements made by Officer Phillips were not objected to by Clay during trial. In addition, on cross-examination, Clay's attorney inquired about the other incidents to make the point that Hamann was always intoxicated when the police were called.

{¶ 34} Evid.R. 404(B) provides the following:

Character Evidence Not Admissible to Prove Conduct; Exceptions; Other Crimes

\* \* \*

(B) Other crimes, wrongs or acts.

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

{¶ 35} Generally, prior bad acts by a defendant against the same victim are admissible in domestic-violence cases to prove the defendant's intent. *State v. Blonski* (1997), 125 Ohio App.3d 103, 113, 707 N.E.2d 1168; *State v. Johnson* (1994), 73 Ohio Misc.2d 1, 3, 657 N.E.2d 383. When using a defendant's prior acts to show his intent, "the offense for which the defendant is being tried and the other act must have occurred reasonably near to each other and a similar scheme, plan or system must have been utilized to commit the offense at issue and the other offenses." Id. at 113, 707 N.E.2d 1168.

{¶ 36} In this case, Officer Phillips testified that he had been to the couple's place in the past because of various altercations. He did not elaborate other than to say, on cross-examination, that every time he was there Hamann had been drinking. We find that the trial court did not err when it allowed this testimony. Accordingly, Clay's fourth assignment of error is overruled.

V. The trial court improperly permitted a police officer to bolster the credibility of the alleged victim's purported original version of events and to question the veracity of her trial testimony.

{¶ 37} In his fifth assigned error, Clay essentially claims that Officer Alex Zamblauskas improperly bolstered Hamann's original statements and discounted her subsequent trial testimony by offering his opinion that Hamann had been assaulted.

{¶ 38} This court has previously held that "the opinion of a witness as to whether another witness is being truthful is inadmissible." *State v. Potter*, Cuyahoga App. No. 81037, 2003-Ohio-1338, 2003 WL 1355230, citing *State v. Miller* (Jan. 26, 2001), Montgomery App. No. 18102, 2001 WL 62793. "In our system of justice, it is the fact finder, not the so-called expert or lay witnesses, who bears the burden of assessing the credibility and veracity of witnesses." *State v. Eastham* (1988), 39 Ohio St.3d 307, 530 N.E.2d 409.

{¶ 39} Officer Zamblauskas never offered an opinion about what occurred between Clay and Hamann or whether the victim was being truthful. Officer Zamblauskas testified about the facts as he found them, stating, "She definitely had a mark and redness on her face. Something definitely happened to her face." He never indicated that it was his opinion that the victim had been assaulted; rather, he testified as to what he observed.

{¶ 40} We find that Officer Zamblauskas did not improperly bolster the victim's testimony. Accordingly, Clay's fifth assignment of error is overruled.

VI. Appellant was denied his Due Process right to a fair trial as a result of prosecutorial misconduct.

{¶ 41} In this assigned error, Clay claims that the prosecutor committed prosecutorial misconduct during voir dire, opening statement, the presentation of the evidence, and closing argument. The claimed misconduct centers on the prosecutor's commenting on the victim's reluctance to testify consistently with her previously recorded written statement.

{¶ 42} The prosecutor told the jury that the victim was not likely to testify consistently with her written statement. He also stated that it was the state, not the victim, who brings charges in these cases. He further discussed the fact that many domestic-violence victims minimize the prior events in an attempt to protect the person with whom they are in a relationship, and he commented on the inconsistency between the victim's earlier account of events and portions of her trial testimony. These comments continued during the presentation of the evidence and during closing argument.

{¶ 43} The test for prosecutorial misconduct is whether the prosecutor's remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused. *State v. Bey* (1999), 85 Ohio St.3d 487, 493, 709 N.E.2d 484. The focus of that inquiry is on the fairness of the trial, not the culpability of the prosecutor. Id.

{¶ 44} Generally, prosecutors are entitled to considerable latitude in opening statements and closing arguments. *Maggio v. Cleveland* (1949), 151 Ohio St. 136, 38 O.O. 578, 84 N.E.2d 912.

{¶ 45} The opening statement is not evidence but is intended to advise the jury what counsel expects the evidence to show. *State v. Turner* (1993), 91 Ohio App.3d 153, 631 N.E.2d 1117. Therefore, the prosecutor and defense counsel may, in good faith, make statements as to what they expect the evidence will show. *State v. Patterson,* Stark App. No. 2005CA00078, 2005-Ohio-6703, 2005 WL 3475740. Commenting on the truthfulness of a witness is not proper. *State v. Smith* (1984), 14 Ohio St.3d 13, 14 OBR 317, 470 N.E.2d 883.

{¶ 46} In opening statements, the state improperly referred to the victim's written statement and stated that the victim's testimony most likely would not be consistent with her signed written statement, but repeatedly urged the jury to believe the statement, not the testimony. Under these circumstances, the written statement was inadmissible as substantive evidence and should not have come in except for impeachment purposes, if the court had declared the victim to be a court witness and the requirements of Evid.R. 613(B) were met. Further, commenting on the veracity of the victim's yet-to-be-heard testimony was improper.

{¶ 47} A prosecutor may freely comment in closing argument on what the evidence has shown and what reasonable inferences the prosecutor believes may be drawn therefrom. *State v. Lott* (1990), 51 Ohio St.3d 160, 555 N.E.2d 293. In determining whether the prosecutor's remarks were prejudicial, the state's argument must be viewed in its entirety. *State v. Whitfield,* Montgomery App. No. 22432, 2009-Ohio-293, 2009 WL 161336. The prosecutor may comment upon the circumstances of witnesses in their testimony, including their interest in the case, their demeanor, their peculiar opportunity to review the facts, their general intelligence, and their level of awareness as to what is going on. The prosecutor may conclude by arguing that these circumstances make the witnesses more or less believable and deserving of more or less weight. *State v. Walton,* Cuyahoga App. No. 89771, 2008-Ohio-3137, 2008 WL 2535971.

{¶ 48} In his closing argument, the prosecutor stated:

Now, first of all, you heard from Miss Hamann herself when she get [sic] up on the stand. And even before that I did indicate to you in voir dire, as well as in opening, that as the State we don't have the courtesy or luxury of choosing our victims. So we take our victims as we find them. And that may mean that we may not have the perfect victim in the world, that they're going to go right along with what happened and just corroborate what's in writing as to what happened, you know, on that day in time. And I did forewarn you and also state to you that, quite possibly, you would have a victim here that would not tell it like it actually happened especially on that day as opposed to her reciting it the day before.

So I just want you to keep that in mind, but I want you to definitely hold her to the facts that occurred on that day based on the evidence and testimony that you did hear, as well as her witness statement, which is a very important part in this case, and that being that she signed that witness statement voluntarily without coercion, force, or threat whatsoever by anyone or the police, plus she initialed that statement, too.

{¶ 49} Again, we find the prosecutor's comments to be improper. When the prosecutor's comments are found to be improper, it is not enough that there be sufficient other evidence to sustain a conviction. Instead, it must be clear beyond a reasonable doubt that absent the prosecutor's comments, the jury would have found defendant guilty. *Smith,* supra.

{¶ 50} The evidence in the case was clear; Clay assaulted Hamann. Hamann was hysterical when she called Gallagher and told her what had happened, and she was still hysterical when she repeated to the police what had happened. Further, Hamann's face showed proof that she had recently been assaulted. Accordingly, we find that it is clear that the jury would have found Clay guilty absent the prosecutor's improper comments.

{¶ 51} Clay's sixth assignment of error is overruled.

VII. The trial court erred in dismissing, sua sponte and over objection of defense counsel, a juror at the conclusion of the State's case.

{¶ 52} In this assigned error, Clay takes issue with the trial court's decision to replace a juror after the juror complained that the court was inconsiderate for making the jury wait for two hours.

{¶ 53} The trial court's removal of a juror and replacement of that juror with an alternate is within the trial court's discretion, under R.C. 2945.29 and Crim.R. 24(F)(1). *State v. Mitchell,* Muskingum App. No. CT2006–0090, 2007-Ohio-5519, 2007 WL 2994142.

{¶ 54} The court was entertaining lengthy Crim.R. 29 motions when the juror told the court bailiff that the court was inconsiderate for making them wait. After a dialogue with the trial court, the juror settled down and indicated that he could continue. Nevertheless, the court dismissed the juror, explaining that it did not want jury duty to upset the juror because the juror was almost 74 years old and he indicated that he had just had aortic aneurysm surgery two weeks earlier and had been "cut all the way up." An alternate took the juror's place.

{¶ 55} We find that the trial court's decision was not arbitrary or unreasonable and thus not an abuse of discretion. Accordingly, Clay's seventh assignment of error is overruled.

VIII.   The trial court erred in refusing to bifurcate the prior domestic violence convictions as requested by appellant.

{¶ 56} In this final assigned error, Clay asserts that the trial judge erred by not bifurcating the trial to separately try the issue of his two prior convictions for domestic violence.   Clay argues that the prior convictions are mere "penalty enhancers" and are not really elements of the domestic-violence charge.

{¶ 57} Where the existence of a prior conviction enhances the penalty for a subsequent offense but does not elevate the degree thereof, the prior conviction is not an essential element of the subsequent offense and need not be alleged in the indictment or proved as a matter of fact.   *State v. Allen* (1987), 29 Ohio St.3d 53, 29 OBR 436, 506 N.E.2d 199, syllabus.   Conversely, where the prior conviction elevates the degree of the subsequent offense, it is an essential element of that offense and may not be tried separately from the remainder of the elements of that offense pursuant to R.C. 2941.142 or 2941.143.   Id. at 54, 29 OBR 436, 506 N.E.2d 199;   *State v. Swiger* (1987), 34 Ohio App.3d 371, 518 N.E.2d 972.   In a felony domestic-violence charge, the prior conviction is an essential element of the offense because it elevates the degree of the offense; therefore, the trial cannot be bifurcated to allow a prior conviction to be separately tried.   *State v. Wesley,* Cuyahoga App. No. 80684, 2002-Ohio-4429, 2002 WL 1986545;   *State v. Torres* (Mar. 31, 1999), Wood App. No. WD–98–049, 1999 WL 173980;   *State v. Howell* (Aug. 14, 1995), Stark App. No. 94 CA 0359, 1995 WL 497638.

{¶ 58} Clay relies on two recent Ohio Supreme Court decisions, *State v. Smith,* 117 Ohio St.3d 447, 2008-Ohio-1260, 884 N.E.2d 595, and *State v. Fairbanks,* 117 Ohio St.3d 543, 2008-Ohio-1470, 885 N.E.2d 888, in support of his position.   Clay argues that these two decisions support his argument that his prior convictions should have been separately tried.

{¶ 59} The *Smith* case addresses whether theft is a lesser included offense of robbery.   At some point, the court stated that value is not an element of theft but rather a special finding to determine the degree of the theft offense.   We decline to read *Smith* so broadly as to imply that it has relevance to an allegation of a prior domestic-violence conviction.

{¶ 60} We find Clay's interpretation of *Fairbanks* to be wholly inaccurate.   Although the court referred to the R.C. 2921.331(C)(5)(a)(ii) "substantial risk of serious physical harm to persons or property" as a penalty-enhancing provision, the court does not in any way suggest that it is not an element of the offense.

{¶ 61} Since existing case law establishes that a prior conviction for domestic violence is an essential element of the offense and cannot be tried separately from the other elements, Clay's eighth assignment of error is overruled.

Judgment affirmed.

STEWART, J., concurs.

CELEBREZZE, J., dissents.

FRANK D. CELEBREZZE JR., Judge, dissenting.

{¶ 62} I respectfully dissent. I would find appellant's second assignment of error dispositive of the case and vacate his conviction.

{¶ 63} In his second assignment of error, appellant argues that there is insufficient evidence that he knowingly caused physical harm to Hamann or that Hamann was a family or household member for purposes of R.C. 2919.25 and, therefore, that he cannot be convicted of domestic violence. Although I agree with the majority that when the evidence is viewed in a light most favorable to the state, there was sufficient evidence that appellant knowingly caused Hamann physical harm, I am not convinced that there was sufficient evidence that Hamann was appellant's family or household member, as defined by R.C. 2919.25(F).

{¶ 64} A victim's status as a "family or household member" is a required element of the offense of domestic violence. *State v. Hannon*, 4th Dist. No. 04CA20, 2005-Ohio-874, 2005 WL 477858. Since appellant is not Hamann's spouse or former spouse, the only remaining possibility under the definition in R.C. 2919.25(F) is that Hamann is "a person living as a spouse" with appellant. "A person living as a spouse" is defined as "a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within one year prior to the date of the alleged commission of the act in question." R.C. 2919.25(F)(2). The state must prove that the offender and victim are "family" or "household members" through evidence that they are living together as spouses, i.e., "cohabiting." See *State v. Williams* (1997), 79 Ohio St.3d 459, 683 N.E.2d 1126.

{¶ 65} In her dissent in *State v. Carswell*, 114 Ohio St.3d 210, 2007-Ohio-3723, 871 N.E.2d 547, Justice Lanzinger acknowledged that the domestic-violence statute is specifically designed to protect two people who are more than merely roommates. "The General Assembly's classification of 'person living as a spouse' is a *recognition* by law of the relationship of unmarried and cohabiting individuals based solely on the similarity of that relationship to marriage. It is a status that enables a victim of assault the additional protection offered by the domestic violence statutes. Domestic violence is a crime quite different from a general assault, precisely because of the special intimacy of the parties." (Emphasis sic.) Id. at ¶ 50 (Lanzinger, J., dissenting).

{¶ 66} Had the General Assembly wanted to extend the protection of R.C. 2919.25 to those living in a familial relationship, it was "not prevented from expanding the statutes to others, such as 'all those living together in a domicile,'" which it chose not to do. Id. at ¶ 52.

{¶ 67} A criminal statute must be strictly construed against the state. *State v. Jordan* (2000), 89 Ohio St.3d 488, 492, 733 N.E.2d 601. I do not agree that the state presented sufficient evidence that Hamann was cohabiting with appellant. Instead, the evidence suggests that appellant and Hamann were more akin to roommates. Hamann's testimony was that she and appellant kept separate bank accounts and that although they resided in the same household, they did not have a physically intimate relationship and were not "living together" as the term is commonly used. At most, the evidence shows that Hamann was staying at the Biddulph Road apartment with appellant while she looked for employment in Cleveland. Thus, I do not believe that the evidence establishes cohabiting, as defined in *Williams*, supra.

{¶ 68} The state's failure to present sufficient evidence that Hamann was living as appellant's spouse is fatal to the charge of domestic violence, and I would sustain appellant's second assignment of error and reverse his conviction.