[Cite as *State v. Jordan*, 2012-Ohio-668.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY

State of Ohio,                                  :
                                               :
      Plaintiff-Appellee,           :          Case No: 11CA14
                                               :
      v.                            :
                                               :          DECISION AND
Floyd Jordan, Jr.,                             :          JUDGMENT ENTRY
                                               :
      Defendant-Appellant.          :          Filed: February 15, 2012

---

APPEARANCES:

Michael D. Hess, Circleville, Ohio, for Appellant.

Judy C. Wolford, Pickaway County Prosecutor, and Matthew L. O'Leary, Pickaway County Assistant Prosecutor, Circleville, Ohio, for Appellee.

---

Kline, J.:

{¶1}     Floyd Jordan, Jr., (hereinafter "Jordan") appeals the judgment of the Pickaway County Court of Common Pleas, which convicted him of complicity to aggravated robbery and complicity to petty theft.  On appeal, Jordan contends that his convictions are against the manifest weight of the evidence.  According to Jordan, the evidence demonstrates that he did not aid or abet Bryan Jackson (hereinafter "Jackson") in committing the offenses.  We disagree.  Based on a totality of the circumstances, we find substantial evidence upon which the jury could have reasonably concluded that Jordan aided or abetted Jackson.  Accordingly, we overrule Jordan's sole assignment of error and affirm the judgment of the trial court.

I.

{¶2}      Paulica Haddox (hereinafter "Haddox") and Melissa Fowler (hereinafter "Fowler") had been staying at a house owned by Allen Hill (hereinafter "Hill").  On December 11, 2010, Haddox parked her van in front of Hill's house.  After Haddox and Fowler got out of the van, they noticed Jordan and Jackson walking towards them.  At trial, Fowler testified as to what happened next:

> And [Jordan] and [Jackson] were walking towards us, I seen them walking, but I didn't think nothing about it.  I was trying to actually make it in the house before they could get down there, because I'm afraid of them.  And [Jordan] called my name and I ignored him the first time, and then I got almost up to the gate and he yelled for me again, he called my name and told me to come here, and I told him no, and they started walking faster towards us.  Transcript at 97.

Fowler and Haddox soon got to Hill's porch, where Jordan and Jackson caught up with them.  At that time, Fowler saw that Jackson had a gun.  Fowler later testified that Jordan could have also seen Jackson's gun while they were on the porch.

{¶3}      Fowler banged on the door and screamed for Hill to unlock it.  Eventually, Hill unlocked the door, and Fowler, Haddox, Jordan, and Jackson "all kind of rushed through the door at once."  Transcript at 102.  As Jordan stood in the front doorway, Jackson questioned Fowler about two men named "Rocky" and "Joe."  Fowler responded that she did not know what Jackson was talking about.  Fowler's response prompted Jordan to say, "Oh, she's going to play stupid bro, she's going to act like she

don't know what you're talking about." Transcript at 98.  Jackson then stuck his gun into Fowler's midsection and demanded her phone.

**{¶4}** After he took the phone, Jackson put his gun to Fowler's head, demanded her money, and yelled, "Do you wanna die bitch?"  Transcript at 108.  Jordan continued to stand in the front doorway while this transpired.  Eventually, Jackson took $150 from Fowler.  Jordan then said, "Come on man, let's get out of here."  Transcript at 157. Jordan and Jackson left the house after that.

**{¶5}** At his trial, Jordan faced charges of (1) complicity to aggravated robbery with a firearm specification, (2) complicity to kidnapping with a firearm specification, and (3) complicity to petty theft.  Fowler and Haddox were the only witnesses to testify. Eventually, the jury found Jordan guilty of all three charges, and the trial court sentenced Jordan accordingly.  (The trial court merged the kidnapping charge into the aggravated robbery charge.)

**{¶6}** Jordan appeals and asserts the following assignment of error: I. "APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

II.

**{¶7}** In his sole assignment of error, Jordan contends that his convictions are against the manifest weight of the evidence.  Jordan does not deny that he was there while Jackson robbed Fowler, and Jordan does not dispute Fowler and Haddox's version of events.  Rather, Jordan claims the evidence demonstrates that he "was just merely present when Jackson committed th[e] offen[ses]."  Brief of Defendant-Appellant at 4.  In other words, Jordan argues that he did not aid or abet Jackson.

{¶8} When determining whether a criminal conviction is against the manifest weight of the evidence, we "will not reverse a conviction where there is substantial evidence upon which the [trier of fact] could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." *State v. Eskridge*, 38 Ohio St.3d 56, 526 N.E.2d 304 (1988), paragraph two of the syllabus. *See also State v. Smith*, 4th Dist. No. 06CA7, 2007-Ohio-502, ¶ 41. We "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted." *Id.*, citing *State v. Garrow*, 103 Ohio App.3d 368, 370-371, 659 N.E.2d 814 (4th Dist.1995); *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). But "[o]n the trial of a case, * * * the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

{¶9} Under R.C. 2923.03(A)(2), "No person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense[.]" "'Aiding and abetting' is defined as '[o]ne who assists another in the accomplishment of a common design or purpose.'" *State v. Duck*, 5th Dist. No. 2010CA00174, 2011-Ohio-3035, ¶ 10, quoting Black's Law Dictionary 68 (6th Ed.1990). And here, the jury could have reasonably concluded that Jordan assisted Jackson in committing the offenses.

**{¶10}** First, based on a statement that Jordan made to Jackson, the jury could have reasonably inferred that Jordan was more than a mere spectator to Jackson's criminal activity. After Jackson questioned Fowler about Rocky and Joe, Jordan said, "Oh, [Fowler's] going to play stupid bro, she's going to act like she don't know what you're talking about." Transcript at 98. This statement does not demonstrate that Jackson's behavior caught Jordan by surprise. On the contrary, this statement demonstrates that Jordan knew the basis for Jackson's line of questioning. Therefore, the jury could have reasonably inferred that Jordan understood the initial motivation for the crimes against Fowler. And if Jordan understood the initial motivation, the jury could have reasonably viewed Jordan's actions -- from beginning to end -- as a means to assist Jackson.

**{¶11}** Several actions demonstrate that Jordan aided or abetted Jackson, especially considering the inference that Jordan understood the motivation for Jackson's behavior. First, Jordan and Jackson walked together towards Fowler and Haddox. By walking together, the jury could have reasonably concluded that Jordan and Jackson had a common purpose. Second, Fowler testified that Jordan could have seen Jackson's gun while they all stood on the porch. This testimony undercuts Jordan's argument that he was "merely present" while Jackson committed the offenses. If Jordan was unaware of Jackson's criminal intentions, why would he rush into the house with Jackson after seeing Jackson's gun? The jury could have reasonably concluded that Jordan rushed in to assist Jackson. Finally, while inside the house, Jordan demonstrated assistance by standing in the front doorway. As Haddox testified:

**{¶12}** "Q. Let's concentrate on Floyd Jordan[.] Where was he?

**{¶13}** "A. Standing by the front door.

**{¶14}** "Q. Okay. Could you have gotten out the door?

**{¶15}** "A. No. Not with him in front of it.

**{¶16}** "Q. He would have had to move?

**{¶17}** "A. Yes." Transcript at 143-44.

**{¶18}** Because Jordan blocked the front door, the jury could have reasonably concluded that Jordan assisted Jackson by preventing a means of escape.

**{¶19}** If we considered Jordan's actions separately and distinctly, perhaps we would find less-than-substantial evidence that he aided or abetted Jackson. But here, we must consider the totality of the circumstances, from the time Jordan shouted Fowler's name to the time he left the house with Jackson. Furthermore, we must view Jordan's actions with the reasonable inference that he understood the motivation for the crimes against Fowler. Therefore, based on a totality of the circumstances, we find substantial evidence upon which the jury could have reasonably concluded that Jordan aided or abetted Jackson.

**{¶20}** Accordingly, we overrule Jordan's sole assignment of error and affirm the judgment of the trial court.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED.  Appellant shall pay the costs herein taxed.

The Court finds that there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.


Abele, P.J. and Harsha, J.: Concur in Judgment and Opinion.

For the Court


BY:_____
         Roger L. Kline, Judge



## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**