[Cite as *State v. Jackson*, 2012-Ohio-6276.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY

| | | |
|---|---|---|
| State of Ohio, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No: 11CA20 |
| | : | |
| v. | : | |
| | : | DECISION AND |
| Bryan W. Jackson, | : | JUDGMENT ENTRY |
| | : | |
| Defendant-Appellant. | : | Filed: December 27, 2012 |

APPEARANCES:

Erik P. Henry, CARPENTER LIPPS & LELAND LLP, Columbus, Ohio, for Appellant.

Judy C. Wolford, Pickaway County Prosecuting Attorney, and Matthew L. O'Leary, Pickaway County Assistant Prosecuting Attorney, Circleville, Ohio, for Appellee.

Kline, J.:

{¶1} Bryan W. Jackson (hereinafter "Jackson" or "Gucci") appeals the judgment of the Pickaway County Court of Common Pleas, which convicted him of aggravated robbery with a firearm specification, petty theft, and having a weapon while under disability. Jackson raises numerous arguments on appeal. First, he argues that the trial court should have suppressed evidence related to several photo lineups. Because the photo lineups were not unnecessarily suggestive, we disagree. Next, Jackson contends that he received ineffective assistance of counsel. We disagree. Jackson's trial counsel was not deficient in most instances, and the one instance of deficiency did not result in prejudice. Furthermore, many of the complained-of actions were part of a reasonable trial strategy. Next, Jackson argues that he was the victim of prosecutorial

misconduct.  Because the prosecutor's actions were not improper, we disagree.  Finally,

Jackson contends that his convictions are against the manifest weight of the evidence.

We disagree because the jury could have reasonably concluded that the various

offenses had been proven beyond a reasonable doubt.  Accordingly, we overrule

Jackson's assignments of error and affirm the judgment of the trial court.

## I.

## A. The Incident

{¶2}    Paulica Haddox (hereinafter "Haddox") and Melissa Fowler (hereinafter

"Fowler") had been staying at a house owned by Allen Hill (hereinafter "Hill").  On

December 11, 2010, Haddox parked her van in front of Hill's house.  After Haddox and

Fowler got out of the van, they noticed Floyd Jordan (hereinafter "Jordan" or "Spanky")

and Jackson walking towards them.  At trial, Fowler testified as to what happened next:

> A.  Spanky yelled my name and then he yelled at me and
>
> told me to come here.
>
> * * *
>
> Q. * * * How did you feel when you heard Spanky yelling
>
> your name?
>
> A.  Threatened.  He screamed it like I knew something was
>
> wrong.
>
> Q.  And what were they doing as he screamed it?
>
> A.  Just walking.
>
> * * *

Q.  What did you do after you felt threatened by the way he yelled your name?

A.  I started walking faster, trying to make it into the house.

* * *

Q.  And what happened when you got up onto [the] porch?

A.  I got to the front door and it was locked and I was beating on the front door, and [Hill] came and unlocked it and then we just all went in the house at once.

Q.  Who was on the porch then when the door opened?

A.  Me, [Haddox], Spanky and Gucci.

* * *

Q.  What happens when the door swings open?

A.  We just all kind of went in the door together * * *.

Transcript at 214-218.

{¶3}   Once inside the house, Jackson held a gun and questioned Fowler about two men named "Rocky" and "Joe."  Fowler responded that she did not know what Jackson was talking about.  Fowler's response prompted Jackson to say, "Check your phone bitch."  Transcript at 219.  Jackson then took Fowler's phone out of her hand.  A short time later, Jackson put his gun to Fowler's head and said, "Give me your sh*t!  Do you want to die bitch?"  Transcript at 256.  Jackson then took $150 from Fowler, and Jackson and Jordan left after that.  (For his participation in this incident, Jordan was convicted of both complicity to aggravated robbery and complicity to petty theft.  *See*

*State v. Jordan*, 4th Dist. No. 11CA14, 2012-Ohio-668.  Jordan's trial took place before

Jackson's trial.)

**{¶4}**   Fowler called 911 after Jackson and Jordan left.  She told the operator

that somebody had "held a gun to [her] and * * * took [her] phone."  Fowler also said that

it was "Floyd and I don't know the other one they call him Gucci."  Eventually, the police

responded to Fowler's call.

## B. The Photo Lineup

**{¶5}**   On December 14, 2011, Sergeant Bob Chapman (hereinafter "Sergeant

Chapman") of the Circleville Police Department conducted photo lineups with Fowler

and Haddox.

> Sergeant Chapman testified that the "folder system"
>
> he utilized in this case consisted of basically the method set
>
> forth in R.C. 2933.83(A)(6).  Chapman used one "suspect
>
> photograph" of Jackson, five "filler photographs" * * * that
>
> matched the description of the defendant, four "blank
>
> photographs" that contained no image, and ten empty
>
> folders.
>
> Sergeant Chapman followed the same procedure with
>
> respect to co-defendant [sic] Floyd "Spanky" Jordan.
>
> Chapman told Melissa Fowler that he would be
>
> allowing her to view a photo array that consisted of ten
>
> numbered folders that contained either a photo of someone
>
> or a blank piece of paper.  Fowler was instructed to look

inside each folder as Chapman handed them to her and not to say anything until she viewed all of them.

Sergeant Chapman told Fowler that the photo arrays may or may not contain a photo of the alleged perpetrator. Fowler was also advised that she was not obligated to identify anyone and that she should not identify anyone unless she was certain of her choice.

Per the testimony of Sergeant Chapman, Melissa Fowler identified Floyd "Spanky" Jordan in folder #3 of his array. Ms. Fowler signed Jordan's photo sheet. Ms. Fowler identified defendant Bryan Jackson (aka: "Gucci") in folder #6 of his array. Ms. Fowler signed Jackson's photo sheet as well.

Sergeant Chapman testified that the same folder system was used with respect to Paulica Haddox. Ms. Haddox identified Floyd "Spanky" Jordan in folder #3 of his array. Ms. Haddox signed Jordan's photo sheet. Furthermore, Ms. Haddox identified defendant Bryan Jackson in folder #3 of his array and signed the photo sheet. This concluded the two photo arrays. April 15, 2011 Decision and Entry.

**{¶6}** Sergeant Chapman conducted the photo lineups even though he knew Jordan's and Jackson's identities. And as Sergeant Chapman later testified, the Circleville Police Department had not yet adopted specific procedures for photo lineups.

## C. Pretrial Issues

**{¶7}** On January 7, 2011, a Pickaway County Grand Jury indicted Jackson for (1) aggravated burglary with a firearm specification, (2) aggravated robbery with a firearm specification, (3) kidnapping with a firearm specification, (4) petty theft, and (5) having a weapon while under disability. Prior to Jackson's trial, the state dismissed the charges for aggravated burglary and kidnapping.

**{¶8}** On March 11, 2011, Jackson filed a motion to suppress the results of the photo lineups. Jackson argued that the photo lineups did not conform with R.C. 2933.83. The trial court, however, denied Jackson's motion to suppress. As the trial court found,

> The only marked deviation from R.C. 2933.83 was Sergeant
> Chapman's failure to state in writing why it was impracticable
> for a "blind administrator" to conduct the photo lineup as
> directed in R.C. 2933.83(B)(2). Likewise, as brought out on
> cross-examination, Sergeant Chapman did not instruct the
> witnesses to comment immediately upon opening each
> folder as to whether or not the photograph was of the person
> responsible for the crime. R.C. 2933.83(A)(6)(f). Rather,
> Sergeant Chapman instructed the witnesses to view all ten
> folders before indicating which numbered folder, if any, was

the perpetrator.  There was nothing improper about using this method as opposed to R.C. 2933.83(A)(6)(f).

Lastly, as testified to by Sergeant Chapman, the Circleville Police Department has yet to formally adopt specific procedures for conducting lineups as directed by R.C. 2933.83(B).  This failure, along with the other deviations, does not automatically render the photo lineup[s] in this case inadmissible.  Any such deviations may be argued to a jury at trial.  April 15, 2011 Decision and Entry.

**{¶9}** Jackson also filed several motions in limine.  In one of these motions, Jackson "request[ed] the court to exclude any and all evidence of the Defendant's prior conviction for carrying a concealed weapon."  April 13, 2011 Motion in Limine.  The trial court, however, denied this particular motion by saying: "[T]his is a motion in limine and for this purpose I show that it will be denied, subject to the court granting a limiting instruction to the jury in the event the defendant even testifies.  I mean we don't even know if that's going to happen so it's clearly just a preliminary matter at this point."  Transcript at 105-106.

## D. The Trial

**{¶10}** During the state's opening argument, the prosecutor made several references to drugs, addiction, and the drug problem in the community.  The prosecutor introduced the topic of drugs by saying: "[T]he Defendant will present evidence as well. Very likely a lot of you simply shouldn't believe these witnesses, that there was no gun. The defendant can make that argument because Melissa Fowler and Paulica Haddox

aren't saints.  They've both struggled with drug addiction.  The state is not trying to hide that from you today."  Transcript at 200.

{¶11}  Defense counsel also referenced drugs during his opening argument.  For example, in assessing witness credibility, Jackson's trial counsel asked the jury to "[t]ake into consideration the testimony, the behavior, the mentality of the drug addict * * *."  Transcript at 205.

{¶12}  Fowler, Haddox, and Hill all testified on behalf of the state.  Their testimony was not consistent as to every detail, but each of them testified that Jackson pointed a gun at Fowler.  Furthermore, both Fowler and Haddox testified that Jackson took Fowler's money and cell phone.

{¶13}  Fowler and Haddox also testified about their involvement with drugs.  And on cross-examination, Jackson's trial counsel asked both Fowler and Haddox about apparent inconsistencies between their testimony during Jordan's trial and their testimony in the present case.

{¶14}  Jordan testified on behalf of the defense.  According to Jordan, Jackson did indeed confront Fowler because she was "bad mouthing Gucci."  Transcript at 282.  But Jordan testified that Jackson did not (1) pull out a gun or (2) take Fowler's money or cell phone.  Instead, Jordan testified that Jackson simply took Fowler's "drugs off the table and walked out of the house."  Transcript at 285.  (Jackson's trial counsel attributed Fowler's 911 call to her "freaking out because she [did] not have her drugs."  Transcript at 203-204.)

{¶15}  Jackson also testified in his defense, and he admitted to confronting Fowler at Hill's house.  But Jackson denied (1) that he had a gun or (2) that he took

Fowler's money.  Instead, Jackson testified that he simply took Fowler's drugs and her cell phone.

{¶16}  During Jackson's direct testimony, Jackson's trial counsel asked Jackson about some of his prior convictions, including the conviction for carrying a concealed weapon.

{¶17}  Eventually, the jury found Jackson guilty of (1) aggravated robbery with a firearm specification, (2) petty theft, and (3) having a weapon while under disability.

E. The Sentence

{¶18}  The state recommended the following sentence: "[N]ine years total[.]  * * * [S]ix years on the aggravated robbery, plus the three on the specification.  The three years on the weapons, ask that to be run concurrent, the same with the petty theft * * *." Transcript at 347.  Jackson's trial counsel agreed with the state's recommendation.  But in explaining why he agreed, Jackson's trial counsel said that Jackson would be eligible for judicial release "after * * * five years."  Transcript at 348.  This statement was not accurate because a sentence for a firearm specification is mandatory.  R.C. 2929.14(B)(1)(a)(ii).  Therefore, under the state's recommended sentence, Jackson would have been eligible for judicial release after eight years, not five.  *See* R.C. 2929.20(A)(1)(a) and 2929.20(C)(4).  Regardless, the trial court did not follow the jointly recommended sentence and, instead, sentenced Jackson to a total combined prison term of twelve years.

{¶19}  Jackson appeals and asserts the following assignments of error: I. "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS IDENTIFICATIONS MADE DURING PHOTO LINEUPS.  SAID ERROR DEPRIVED

APPELLANT OF HIS RIGHT TO DUE PROCESS OF LAW." II. "STATEMENTS MADE BY THE PROSECUTOR CONSTITUTED PROSECUTORIAL MISCONDUCT THEREBY DENYING APPELLANT A FAIR TRIAL AND DUE PROCESS OF LAW, IN VIOLATION OF APPELLANT'S FIFTH, SIXTH AND FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION, AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION." III. "TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF APPELLANT'S RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTION[S] 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION." And IV. "THE TRIAL COURT VIOLATED APPELLANT'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN IT ENTERED A JUDGMENT OF CONVICTION WHEN THAT JUDGMENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF APPELLANT'S RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION."

II.

{¶20} In his first assignment of error, Jackson contends that the trial court should have granted his motion to suppress evidence related to the photo lineups.

{¶21} Our "'review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses.'" *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 100, quoting *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372,

797 N.E.2d 71, ¶ 8.  Therefore, we "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8.  "Accepting these facts as true, [we] must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id. Accord Roberts* at ¶ 100; *State v. Stepp*, 4th Dist. No. 09CA3328, 2010-Ohio-3540, ¶ 14.

{¶22}  We "apply a two-prong test in determining the admissibility of challenged identification testimony.  First, the defendant bears the burden of demonstrating that the identification procedure was unnecessarily suggestive.  If this burden is met, the court must then consider whether the procedure was so unduly suggestive as to give rise to irreparable mistaken identification." *State v. Robinson*, 8th Dist. No. 94293, 2010-Ohio-5776, ¶ 14, citing *State v. Page*, 8th Dist. No. 84341, 2005-Ohio-1493, ¶ 12; *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).  Under the second prong, "the issue is whether the identification, viewed under the totality of the circumstances, is reliable despite the suggestive procedure." *State v. Wills*, 120 Ohio App.3d 320, 324, 697 N.E.2d 1072 (8th Dist.1997).

A.

{¶23}  Initially, Jackson argues that results of the photo lineups should have been suppressed because law enforcement did not comply with R.C. 2933.83.

{¶24}  The Second Appellate District discussed R.C. 2933.83 in *State v. Stevenson*, 2d Dist. No. 24821, 2012-Ohio-3396.  As the court noted, R.C. 2933.83

> "requires any law enforcement agency or criminal justice
>
> entity that conducts live lineups and photo lineups to adopt

specific procedures for conducting the lineups." *State v.*

*Ruff*, 1st Dist. [] No. C-110250, 2012-Ohio-1910, ¶ 5.  These

procedures include, inter alia, using "a blind or blinded

administrator" to conduct a photo lineup.  R.C.

2933[.]83(B)(1).  Under R.C. 2933.83(C)(1), evidence of a

failure to comply with the required protocol "shall be

considered by trial courts in adjudicating motions to

suppress eyewitness identification resulting from or related

to the lineup."

*Stevenson* at ¶ 16.

**{¶25}** It is undisputed that law enforcement did not comply with R.C. 2933.83.

Nevertheless, failure to comply with R.C. 2933.83 does not, by itself, warrant the

suppression of evidence.  "The language of R.C. 2933.83(C)(1) -- particularly the

phrase 'in adjudicating' -- implies that the actual basis for suppression is not rooted in

the statute, but is instead extraneous to it."  *Ruff* at ¶ 7.  Therefore, courts have found

that "'R.C. 2933.83(C)(1) does not provide an independent ground for suppression, and

that [a] trial court [errs] in relying solely on the statute in suppressing' an identification."

(Alterations sic.)  *Stevenson* at ¶ 16, quoting *Ruff* at ¶ 7.  We agree.  Accordingly, we

must determine whether the photo lineups were unnecessarily suggestive.  And here,

we find that they were not.

B.

**{¶26}** First, we find nothing unnecessarily suggestive about the photographs in

and of themselves.  All of the individuals in the photo lineups share similar

characteristics -- that is, they all appear to be African American males, in their mid-to-late 20s, with similar heights and weights.  There is nothing about Jackson's photograph that would cause it to stand apart from the other photographs.

**{¶27}**  Furthermore, there is no evidence that the procedures utilized by Sergeant Chapman caused the photo lineups to be unnecessarily suggestive.  All of Jackson's procedure-related arguments rely on the "appearance of suggestiveness" as opposed to actual evidence of suggestiveness.  Brief of Defendant-Appellant at 16.  For example, Jackson argues that, "[b]ecause Chapman knew the suspects and yet administered the lineups, the lineups were suggestive."  *Id.*  We disagree.  Despite Sergeant Chapman's knowledge of Jackson and Jordan, there is no evidence that Sergeant Chapman unduly influenced the identification process.  And regardless of Jackson's precise argument, there is no evidence that law enforcement did anything to make the identifications of Jackson and Jordan more likely.

**{¶28}**  Accordingly, we find that the photo lineups were not unnecessarily suggestive.  "As a result, we need not address the second prong of the identification-testimony test (the reliability prong)."  *State v. Lewis*, 2d Dist. No. 24271, 2011-Ohio-5967, ¶ 30.  And thus, we overrule Jackson's first assignment of error.

III.

**{¶29}**  For ease of analysis, we will review Jackson's third assignment of error out of order.  In his third assignment of error, Jackson contends that he received ineffective assistance of counsel.

**{¶30}**  "In Ohio, a properly licensed attorney is presumed competent. * * * The appellant bears the burden of proving that his trial counsel was ineffective."  *State v.*

*Hamblin*, 37 Ohio St.3d 153, 155-156, 524 N.E.2d 476 (1988); *accord State v. Norman*, 4th Dist. Nos. 08CA3059 & 08CA3066, 2009-Ohio-5458, ¶ 65.  To secure reversal for the ineffective assistance of counsel, one must show two things: (1) "that counsel's performance was deficient * * *[,]" which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[;]" and (2) "that the deficient performance prejudiced the defense * * *[,]" which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *accord Norman* at ¶ 65.  "Failure to satisfy either prong is fatal as the accused's burden requires proof of both elements." *State v. Hall*, 4th Dist. No. 07CA837, 2007-Ohio-6091, ¶ 11, citing *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 205.

### A.

**{¶31}**  Initially, Jackson contends that trial counsel was ineffective for failing to introduce evidence about the pretrial photo lineups.  Specifically, Jackson argues the following: "Trial counsel possessed impeaching evidence on the State's witnesses and the identifications made in this case, the Ohio Revised Code specifically permits presenting this evidence, and yet trial counsel failed to present anything at trial on the failure to comply with R.C. 2933.83."  Brief of Defendant-Appellant at 26.

**{¶32}**  Based on trial counsel's strategy, we see nothing deficient about the failure to introduce evidence related to the photo lineups.  "When considering whether trial counsel's representation amounts to deficient performance, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance.'" *State v. Porter*, 4th Dist. No. 10CA15, 2012-Ohio-1526, ¶ 38,

quoting *Strickland* at 689.  In other words, we "must be 'highly deferential to counsel's

performance and will not second-guess trial strategy decisions.'" *State v. Simms*, 10th

Dist. No. 10AP-1063, 2012-Ohio-2321, ¶ 46, quoting *State v. Tibbetts*, 92 Ohio St.3d

146, 166-167, 749 N.E.2d 226 (2001).  And here, the state argues the following:

> Trial counsel's decision fell soundly within the realm of trial
>
> tactics or strategy in that Appellant's direct testimony
>
> acknowledged he was present with the State's witnesses at
>
> the Norfolk Avenue Address and committed only a petty
>
> theft, not robbery.  Arguing to the jury that he was
>
> simultaneously present to commit that crime and
>
> misidentified by the witnesses when he did so was
>
> presumably not deemed an effective argument by trial
>
> counsel.  The logical grounds for this tactical decision are
>
> self evident.  Brief of Plaintiff-Appellee at 14.

We agree with the state's argument.  Therefore, Jackson cannot overcome the

presumption that his trial counsel's actions were part of a sound trial strategy.  *See*

*Porter* at ¶ 38, citing *Strickland* at 689.

                                          B.

    **{¶33}**  Next, Jackson contends that trial counsel was ineffective for "fail[ing] to

object to * * * numerous instances of prosecutorial misconduct."  Brief of Defendant-

Appellant at 26.

**{¶34}**   Jackson also makes prosecutorial-misconduct arguments under his second assignment of error.  And rather than analyze the complained-of actions under multiple standards of review, we will use the test for determining whether prosecutorial misconduct actually occurred.  If prosecutorial misconduct did not occur, the failure to object cannot constitute ineffective assistance of counsel.  *See State v. Witherspoon*, 8th Dist. No. 94475, 2011-Ohio-704, ¶ 33 ("[T]he failure to do a futile act cannot be the basis for claims of ineffective assistance of counsel and is not prejudicial.").  And here, we find that prosecutorial misconduct did not occur.

1.

**{¶35}**   "The test for prosecutorial misconduct is whether the conduct was improper and, if so, whether the rights of the accused were materially prejudiced."  *State v. Leonard*, 4th Dist. No. 08CA24, 2009-Ohio-6191, ¶ 36, citing *State v. Smith*, 97 Ohio St.3d 367, 2002-Ohio-6659, 780 N.E.2d 221, ¶ 45, in turn citing *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984).  "The 'conduct of a prosecuting attorney during trial cannot be grounds for error unless the conduct deprives the defendant of a fair trial.'"  *State v. Givens*, 4th Dist. No. 07CA19, 2008-Ohio-1202, ¶ 28, quoting *State v. Gest*, 108 Ohio App.3d 248, 257, 670 N.E.2d 536 (8th Dist.1995).  *Accord State v. Apanovitch*, 33 Ohio St.3d 19, 24, 514 N.E.2d 394 (1987).  "Prosecutorial misconduct constitutes reversible error only in rare instances."  *State v. Edgington*, 4th Dist. No. 05CA2866, 2006-Ohio-3712, ¶ 18, citing *State v. Keenan*, 66 Ohio St.3d 402, 406, 613 N.E.2d 203 (1993).  The "touchstone of analysis * * * is the fairness of the trial, not the culpability of the prosecutor. * * * The Constitution does not guarantee an 'error free, perfect trial.'"  *Leonard* at ¶ 36, quoting *Gest* at 257.

2.

{¶36}  First, Jackson argues that the prosecutor "inappropriately invited the jury to convict Jackson to cure a community drug problem."  Brief of Defendant-Appellant at 26.

{¶37}  "[T]he prosecutor may not invite the jury to judge the case upon standards or grounds other than the evidence and law of the case.  Thus, [the prosecutor] cannot inflame the passion and prejudice of the jury by appealing to community abhorrence or expectations with respect to crime in general, or crime of the specific type involved in the case."  *State v. Draughn*, 76 Ohio App.3d 664, 671, 602 N.E.2d 790 (5th Dist.1992); *accord State v. Dyer*, 4th Dist. No. 07CA3163, 2008-Ohio-2711, ¶ 47.

{¶38}  During opening arguments, the prosecutor made the following statement: "The State's case is premised on the idea that there is a very serious problem in this community.  The only way to begin to fix that problem is to fulfill our obligation and our responsibility to seek justice, regardless of who sits on which side of the [aisle], regardless of who the victims of these crimes may be."  Transcript at 200.  The prosecutor also mentioned the drug problem during closing arguments.  Because of these statements, Jackson claims the prosecutor urged "the jury to return a verdict that was not based on the charges in the case, but one that would address the drug problem in the community."  Brief of Defendant-Appellant at 21.  We disagree.

{¶39}  "The effect of the prosecutor's conduct must be considered in context of the whole case."  *State v. Powers*, 9th Dist. No. 2285-M, 1994 WL 285907, *3 (June 29, 1994), citing *State v. Maurer*, 15 Ohio St.3d 239, 266, 473 N.E.2d 768 (1984).  And here, we agree that "[a]ll of the prosecutor's comments regarding drugs, drug use, and

drugs in the community were directed at bolstering the testimony of the State's own witnesses, not convicting Appellant for crimes with which he was not charged." Brief of Plaintiff-Appellee at 7; *see generally State v. Johnson*, 5th Dist. No. 99-CA-26, 1999 WL 1071686, *6 (Nov. 5, 1999) ("[T]he prosecutor may bolster his own witnesses * * *."). The prosecutor's statements did not ask the jury to "send a message" to the community. *See Dyer* at ¶ 47. Instead, because many of the state's witnesses are part of the drug subculture, the prosecutor had to explain "why the State would present a case to a jury with seemingly unsympathetic victims and witnesses." Brief of Plaintiff-Appellee at 8.

**{¶40}** Accordingly, we cannot find prosecutorial misconduct based on the various references to drugs.

3.

**{¶41}** Next, Jackson contends that the prosecutor "improperly vouched for the reliability of the State's witnesses in a case where the main issue was credibility of witnesses * * *." Brief of Defendant-Appellant at 26-27.

**{¶42}** "Generally, prosecutors are entitled to considerable latitude in opening and closing arguments." *State v. Whitfield*, 2d Dist. No. 22432, 2009-Ohio-293, ¶ 12. For example, prosecutors "can bolster [their] own witnesses, and conclude by saying, in effect, 'The evidence supports the conclusion that these witnesses are telling the truth.'" *Draughn*, 76 Ohio App.3d at 671, 602 N.E.2d 790. But a prosecutor "cannot say, 'I believe these witnesses,' because such argument invades the province of the jury, and invites the jury to decide the case based upon the credibility and status of the prosecutor." *Id.,* citing *Smith*, 14 Ohio St.3d 13, 470 N.E.2d 883; *accord State v. Fether*, 5th Dist. No. 2011-CA-00148, 2012-Ohio-892, ¶ 65.

{¶43} During closing arguments, the prosecutor made the following statement about Fowler, Haddox, and Hill:

> There's not any magic moment here, this comes down to
> who you believe and why you believe them. * * * Why would
> these three people be here today?  What are they getting out
> of this?  The headache of having to come and testify in front
> of all these people, having to see this defendant again?
> There's no benefit to that.  There's no point, unless they're
> telling the truth and this happened, and they are victims, and
> if that is the case this defendant is guilty.  Transcript at 312.

Later, the prosecutor said, "The question you have to ask is who's credible?  Why would these people come here today?  Why would they continue to testify at hearing after hearing after hearing?  To make up a story?  Because it's the truth."  Transcript at 319.

{¶44} Jackson argues that these statements were improper, but we disagree.  A prosecutor may comment upon the circumstances of witnesses in their testimony, including their interest in the case, their demeanor, their peculiar opportunity to review the facts, their general intelligence, and their level of awareness as to what is going on.  The prosecutor may conclude by arguing that these circumstances make the witnesses more or less believable and deserving of more or less weight. *State v. Clay*, 181 Ohio App.3d 563, 2009-Ohio-1235, 910 N.E.2d 14, ¶ 47 (8th Dist.).

Here, the prosecutor never said that he personally believed the state's witnesses. Rather, the prosecutor argued that, under the circumstances, it was more likely that the state's witnesses were telling the truth. We must view the state's argument "in its entirety." *Whitfield* at ¶ 12. And each reference to "the truth" was preceded by a comment about the witnesses' circumstances.

{¶45} Accordingly, we cannot find that the prosecutor improperly vouched for the credibility of the state's witnesses.

4.

{¶46} Next, Jackson contends that the prosecutor "wrongly bolstered the State's case by telling the jury to convict Jackson because a different jury had already viewed the evidence and found Jackson's co-offender guilty." Brief of Defendant-Appellant at 27.

{¶47} During closing arguments, the prosecutor made the following statement about the defense witnesses:

> You know it comes down to credibility. It's almost a case of
> he said and she said really he/she/she and two others. You
> heard the 911 tape also. Consider who was saying what.
> On the defendant's side we heard from Mr. Jordan, who is a
> career felon also himself convicted of the same thing as the
> defendant here is accused of today. I won't go through and
> list his convictions, but you heard drug possession,
> trafficking, aggravated burglary, served time in prison, those
> are serious crimes. I say that because all that bears on his

credibility on whether he is a truthful or honest person or not. The same goes for the defendant, his convictions. He has convictions for trafficking in drugs, receiving stolen property, possessing drugs and lastly, carrying a concealed weapon. Transcript at 308.

**{¶48}** Based on this statement, Jackson argues that "the prosecutor insinuated Jackson's guilt because a different jury already convicted Jackson's co-offender based on the same set of facts." Brief of Defendant-Appellant at 24. We disagree. "Isolated comments by a prosecutor are not to be taken out of context and given their most damaging meaning." *State v. Carter*, 89 Ohio St.3d 593, 603, 734 N.E.2d 345 (2000), citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 647, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). Here, the prosecutor made just one reference to Jordan's conviction for complicity to aggravated robbery. And we agree that "[t]he prosecutor did not dwell upon, nor urge the jury to consider the implications of Floyd Jordan's conviction with respect to anything other than his credibility." Brief of Plaintiff-Appellee at 12. Therefore, based on the context, referring to Jordan's conviction did not rise to the level of prosecutorial misconduct.

**{¶49}** Accordingly, we cannot find misconduct based on the reference to Jordan's conviction for complicity to aggravated robbery.

5.

**{¶50}** Finally, Jackson contends that he was denied a fair trial because of the cumulative effect of multiple instances of prosecutorial misconduct.

**{¶51}** Under the cumulative-error doctrine, "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal." *State v. Garner*, 74 Ohio St.3d 49, 64, 656 N.E.2d 623 (1995).

**{¶52}** We reject Jackson's "cumulative" argument. Here, we have found no instances of prosecutorial misconduct. And if "a reviewing court finds no prior instances of error, then the [cumulative-error] doctrine has no application." *State v. McKnight*, 4th Dist. No. 07CA665, 2008-Ohio-2435, ¶ 108.

6.

**{¶53}** In conclusion, Jackson cannot demonstrate that prosecutorial misconduct occurred. As a result, failing to object to the complained-of actions did not constitute ineffective assistance of counsel. *See Witherspoon*, 2011-Ohio-704, at ¶ 33.

C.

**{¶54}** Jackson also contends that "[t]rial counsel erred in not objecting or requesting a limiting instruction regarding Appellant's co-offender's conviction based on the same set of facts." Brief of Appellant-Defendant at 27. According to Jackson, "the level of prejudice was enormous because evidence of Jackson's supposed accomplice's conviction suggested that Jackson must also be guilty." *Id.* (We note that Jackson introduced evidence from Jordan's trial before the state did. The issue of Jordan's trial was first raised by Jackson's counsel during the cross examination of Fowler. *See* Transcript at 228. Specifically, Jackson's trial counsel asked Fowler about her testimony during Jordan's trial. And because Jackson "opened the door" to

evidence from Jordan's trial, any objection to evidence of Jordan's conviction would have been futile. *See State v. Rizer*, 4th Dist. No. 10CA3, 2011-Ohio-5702, ¶ 33. Accordingly, we will review whether Jackson's trial counsel was generally ineffective in relation to Jordan's conviction for complicity to aggravated robbery.)

{¶55} As it relates to Jordan's conviction for complicity to aggravated robbery, we find that Jackson's trial counsel engaged in a reasonable trial strategy. Jackson's trial counsel consistently attacked the credibility of the state's witnesses by pointing out inconsistencies in their testimony. And to that end, Jackson asked both Fowler and Haddox about their testimony during Jordan's trial. For example, Jackson's trial counsel asked Fowler about apparent inconsistencies in her testimony:

> Q. Now you've testified at Spanky's trial, correct?
>
> A. Um-hum. Yes.
>
> Q. And in Spanky's trial you said you hadn't used drugs for a year, correct?
>
> A. No.
>
> Q. When Spanky's defense attorney ask[ed] you very specifically, "Are you still using drugs?" what was your answer?
>
> A. I believe I said it was last year, which would have made it the end of November, and then I relapsed. Transcript at 228.

Jackson's trial counsel also asked Haddox about apparent inconsistencies in her testimony:

Q. Now, you testified before and you testified that yes, you

would describe [Hill's] house as a drug house; is that

correct?

A. I guess.

Q. You said that at the last testimony, do you still agree with

that?

A. No. Not any more I don't.

Q. Would you have referred to it or described it as a drug

house back in December?

A. No, not really.

Q. So when you described it in the last trial, would you have

been lying when you described it as a drug house?

A. No. I mean people that do drugs yes, they go there.

Transcript at 263-264.

{¶56} Here, Jackson's trial counsel had several choices in relation to Jordan's

conviction for complicity to aggravated robbery. Jackson's trial counsel could have

sought to exclude evidence of Jordan's conviction. But instead, Jackson's trial counsel

introduced evidence from Jordan's trial to attack the credibility of the state's witnesses.

We cannot second-guess Jackson's trial counsel, and "the strategic decision of a trial

attorney will not form the basis of a claim of ineffective assistance of counsel, even if

there may have been a better strategy available." *State v. Komora*, 11th Dist. No. 96-G-

1994, 1997 WL 184758, *3 (Apr. 4, 1997), citing *State v. Clayton*, 62 Ohio St.2d 45, 49,

402 N.E.2d 1189 (1980). Furthermore, because Jackson's overall trial strategy hinged

on witness credibility, highlighting inconsistencies in the witnesses' testimony seems like a reasonable choice. (Indeed, Jackson relies upon inconsistent testimony from Jordan's trial to support both his Crim.R. 29 and manifest-weight-of-the-evidence arguments.) Therefore, Jackson cannot overcome the presumption that his trial counsel's actions were part of a reasonable trial strategy. *See Porter*, 2012-Ohio-1526, at ¶ 38, citing *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674.

**{¶57}** Finally, "[a] trial attorney may decide to eschew limiting instructions regarding potentially prejudicial evidence for tactical reasons, because limiting instructions might call more attention to the evidence and reinforce jurors' prejudice." *State v. Barnes*, 8th Dist. No. 92512, 2010-Ohio-1659, ¶ 69. Therefore, Jackson's counsel "'could reasonably have decided against [requesting a limiting instruction] * * * for fear that [a limiting instruction] would only call the jury's attention to [Jordan's conviction for complicity to aggravated robbery].'" *Leonard*, 2009-Ohio-6191, at ¶ 67, quoting *State v. Patrick*, 4th Dist. No. 94CA02, 1994 WL 485568, *5 (Sept. 8, 1994); *see also State v. Hankison*, 4th Dist. No. 09CA3326, 2010-Ohio-4617, ¶ 131.

**{¶58}** Accordingly, we cannot find ineffective assistance of counsel in relation to Jordan's conviction for complicity to aggravated robbery.

D.

**{¶59}** Next, Jackson contends that "[t]rial counsel erred in asking Appellant on direct examination about his prior conviction for carrying a concealed weapon." Brief of Defendant-Appellant at 28.

**{¶60}** We find that asking Jackson about his concealed-weapon conviction was a reasonable strategic decision. Before trial, Jackson sought to have his concealed-

weapon conviction excluded from evidence. The trial court, however, denied Jackson's motion in limine. Therefore, Jackson's trial counsel knew that the state would probably be allowed to introduce the concealed-weapon conviction during Jackson's cross-examination. *See* Evid.R. 609; *State v. Gott*, 9th Dist. No. 93CA005560, 1993 WL 539595, *7 (Dec. 22, 1993).

**{¶61}** Rather than allow the state to introduce the evidence, Jackson's trial counsel asked Jackson the following questions about the concealed-weapon conviction:

Q. And you have even been convicted of having a firearm

before; is that correct?

A. Yes, sir.

Q. Now, tell us about that. Were you convicted of

brandishing a firearm?

A. No.

Q. I'm sorry, using -- aiming it at somebody?

A. No, sir. Transcript at 299.

"[T]he choice to raise damaging evidence first is an acceptable trial strategy that a defendant can use to enhance his credibility." *State v. Smith*, 9th Dist. No. 23542, 2007-Ohio-5119, ¶ 15. And here, Jackson's trial counsel chose to (1) raise the damaging evidence first and (2) paint that evidence in the most positive light. *See Gott* at *8 ("[T]aking the sting out of the prosecution's anticipated line of questioning would clearly constitute sound trial strategy."). Therefore, Jackson's trial counsel engaged in a reasonable trial strategy, and we cannot find ineffective assistance related to the concealed-weapon conviction.

E.

**{¶62}** Next, Jackson argues that he received ineffective assistance because "[t]rial counsel failed to raise a Rule 29 motion at either the end of the State's case-in-chief or at the close of all the evidence." Brief of Defendant-Appellant at 29. But here, we cannot find ineffective assistance of counsel because any potential Crim.R. 29 motion would have failed. *See State v. Knowlton*, 2012-Ohio-2350, 971 N.E.2d 395, ¶ 34-36 (4th Dist.).

**{¶63}** "We review * * * a defendant's Crim.R. 29 motion for acquittal for sufficiency of the evidence." *State v. Turner*, 4th Dist. No. 08CA3234, 2009-Ohio-3114, ¶ 17, citing *State v. Bridgeman*, 55 Ohio St.2d 261, 381 N.E.2d 184 (1978), syllabus. When reviewing a case to determine if the record contains sufficient evidence to support a criminal conviction, we must

> "examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Smith*, 4th Dist. No. 06CA7, 2007-Ohio-502, ¶ 33, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

*See also Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

**{¶64}** The sufficiency-of-the-evidence test "raises a question of law and does not allow us to weigh the evidence." *Smith*, 2007-Ohio-502, at ¶ 34, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). Instead, the sufficiency-of-the-evidence test "'gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Smith*, 2007-Ohio-502, at ¶ 34, quoting *Jackson* at 319. This court will "reserve the issues of the weight given to the evidence and the credibility of witnesses for the trier of fact." *Smith*, 2007-Ohio-502, at ¶ 34, citing *State v. Thomas*, 70 Ohio St.2d 79, 79-80, 434 N.E.2d 1356 (1982); *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

**{¶65}** Based on the testimony of the state's witnesses, any rational trier of fact could have found the essential elements of the various charges proven beyond a reasonable doubt. Jackson argues that the "State's witnesses testified to numerous, inconsistencies, making their credibility highly questionable." Brief of Defendant-Appellant at 29. But in the context of a Crim.R. 29 motion, "we must assume that the witness[es] testified truthfully." *State v. McDonald*, 4th Dist. No. 11CA1, 2012-Ohio-1528, ¶ 37, citing *State v. Samuel*, 10th Dist. No. 11AP158, 2011-Ohio-6821, ¶ 25. And here, Fowler and Haddox both testified that Jackson pointed a gun at Fowler while taking her cell phone and money. As a result, the state produced sufficient evidence of Jackson's guilt, and any potential Crim.R. 29 motion would have failed.

**{¶66}** Accordingly, we cannot find ineffective assistance of counsel based on the failure to raise a Crim.R. 29 motion.

F.

**{¶67}** Jackson also contends that his "[t]rial counsel provided ineffective assistance during sentencing." Brief of Defendant-Appellant at 30. Essentially, Jackson argues that his trial counsel mistakenly agreed with the prosecutor's recommended sentence. But Jackson's argument clearly fails the prejudice prong of the ineffective-assistance-of-counsel test. *See State v. McIntire*, 4th Dist. No. 09CA10, 2010-Ohio-3955, ¶ 30. The trial court did not follow the jointly recommended sentence of nine years in prison. Instead, the trial court imposed a twelve-year prison term. Therefore, any mistake made by Jackson's trial counsel had no bearing on Jackson's actual sentence.

G.

**{¶68}** Finally, Jackson contends the following: "The cumulative effect of the defense counsel's ineffectiveness, in light of the evidence adduced against Jackson at trial, and when combined with other errors, demonstrates that Jackson was denied due process and a fair trial * * *." Brief of Defendant-Appellant at 31.

**{¶69}** We reject Jackson's cumulative argument. Here, "we have found no ineffective assistance on any of [Jackson's] enumerated instances[. Therefore,] a cumulative argument is not supported." *State v. Thompson*, 10th Dist. No. 10AP-593, 2011-Ohio-6725, ¶ 42.

H.

**{¶70}** In conclusion, we cannot find ineffective assistance of counsel under any of Jackson's arguments, and we overrule Jackson's third assignment of error.

IV.

**{¶71}** In his second assignment of error, Jackson contends that various instances of prosecutorial misconduct deprived him of a fair trial.

**{¶72}** As Jackson acknowledges, his trial counsel did not object to the alleged instances of prosecutorial misconduct. Therefore, Jackson has forfeited all but plain error. *See State v. Keeley*, 4th Dist. No. 11CA5, 2012-Ohio-3564, ¶ 28.

**{¶73}** Under Crim.R. 52(B), we may notice plain errors or defects affecting substantial rights. "Inherent in the rule are three limits placed on reviewing courts for correcting plain error." *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 15.

> "First, there must be an error, *i.e.*, a deviation from the legal rule. * * * Second, the error must be plain. To be 'plain' within the meaning of Crim.R. 52(B), an error must be an 'obvious' defect in the trial proceedings. * * * Third, the error must have affected 'substantial rights.' [The Supreme Court of Ohio has] interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial." (Omissions sic.) *Id.* at ¶ 16, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).

"Prosecutorial misconduct rises to plain error only if it is clear that a defendant would not have been convicted in the absence of the improper comments." *Keeley* at ¶ 28.

**{¶74}** We have already found that prosecutorial misconduct did not occur. And for those same reasons, Jackson cannot show plain error based on prosecutorial misconduct. Accordingly, we overrule Jackson's second assignment of error.

V.

{¶75}  In his fourth assignment of error, Jackson contends that his convictions are against the manifest weight of the evidence.

{¶76}  In a manifest-weight-of-the-evidence review, we "will not reverse a conviction where there is substantial evidence upon which the [trier of fact] could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt."  *State v. Eskridge*, 38 Ohio St.3d 56, 526 N.E.2d 304 (1988), paragraph two of the syllabus; *accord Smith*, 2007-Ohio-502, at ¶ 41.  We "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted."  *Id.*, citing *State v. Garrow*, 103 Ohio App.3d 368, 370-371, 659 N.E.2d 814 (4th Dist.1995); *Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717.  But "[o]n the trial of a case, * * * the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts."  *DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212, at paragraph one of the syllabus.

{¶77}  According to Jackson, "the State's witnesses lacked credibility."  Brief of Defendant-Appellant at 32.  Jackson notes (1) that "Fowler and Haddox admitted to being drug addicts" and (2) that "Fowler has a criminal past."  *Id.*  Furthermore, Jackson claims that "[t]he testimony elicited from the State's witnesses revealed several inconsistencies and changing stories."  *Id.*  As a result, Jackson claims that the defense witnesses were more credible.

**{¶78}** Here, we will defer to the jury's judgment regarding witness credibility. The

> "cautious exercise of the discretionary power of a court of
> appeals to find that a judgment is against the manifest
> weight of the evidence requires that substantial deference be
> extended to the factfinder's determinations of credibility.  The
> decision whether, and to what extent, to credit the testimony
> of particular witnesses is within the peculiar competence of
> the factfinder, who has seen and heard the witness.  * * *
> Accordingly, [t]his court will not substitute its judgment for
> that of the trier of facts on the issue of witness credibility
> unless it is patently apparent that the trier of facts lost its way
> in arriving at its verdict."  (Alteration and omission sic.)  *State
> v. Breidenbach*, 4th Dist. No. 10CA10, 2010-Ohio-4335, ¶
> 19, quoting *State v. Rhines*, 2d Dist. No. 23486, 2010-Ohio-
> 3117, ¶ 39.

**{¶79}** After reviewing the record, we cannot find that the jury lost its way by relying on the testimony of the state's various witnesses.  And finally, "[t]he jury, sitting as the trier of fact, is free to believe all, part or none of the testimony of any witness who appears before it."  *State v. Daniels*, 4th Dist. No. 11CA3423, 2011-Ohio-5603, ¶ 23. Therefore, as it relates to any inconsistent testimony, the jury was free to believe the testimony it found most credible.

{¶80}  Accordingly, we find the following: There is substantial evidence upon which the jury could have reasonably concluded that the various offenses had been proven beyond a reasonable doubt.  As a result, we overrule Jackson's fourth assignment of error.  Having overruled all of Jackson's assignments of error, we affirm the judgment of the trial court.

**JUDGMENT AFFIRMED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED.  Appellant shall pay the costs herein taxed.

The Court finds that there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

Abele, P.J. and McFarland, J.:  Concur in Judgment & Opinion.


For the Court


BY:_____
     Roger L. Kline, Judge



## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**