DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Defendant-Appellant Adam Smith has appealed from his convictions in the Summit County Court of Common Pleas. This Court affirms.
 I {¶ 2} On June 7, 2006, at approximately 3 a.m., Akron 911 dispatchers received a phone call from Appellant requesting police assistance. When officers arrived at his Timber Top apartment they found Appellant shoeless with bloodied arms and a knife wound on his hand. In the upstairs bedroom, his wife Nicole Pantaleano lay naked on the floor. Nicole had been stabbed thirty-six times and died before the police arrived. *Page 2 
 {¶ 3} Appellant initially told police that he had left the apartment shortly before 3 a.m. to buy donuts and upon his return found that two African-American men had broken into the apartment. Appellant vividly described the men and claimed that they had run out before he found his wife upstairs and called 911. Appellant later recanted his story and admitted to stabbing Nicole, disposing of the knife and his bloody clothes in a dumpster, and then calling police with the fictitious story.
 {¶ 4} On June 20, 2006, a grand jury indicted Appellant on charges of murder pursuant to R.C. 2903.02(A), felony murder pursuant to R.C.2903.02(B), tampering with evidence pursuant to R.C. 2921.12(A)(1), and domestic violence pursuant to R.C. 2919.25(A). Before trial, Appellant indicated that he planned on introducing evidence regarding Nicole's mental state to support a voluntary manslaughter instruction. According to Appellant, Nicole's mental instability caused her to stab herself on the night of June 7, 2006 and the sight of this provoked Appellant to the extent that he grabbed the knife and stabbed her thirty-five more times. On August 28, 2006, the State filed a motion in limine to prevent Appellant from introducing evidence on Nicole's mental state and history.
 {¶ 5} The State also filed a notice of intent to present other acts evidence on August 16, 2006. After a hearing on both motions, the trial court granted the motion in limine on September 18, 2006 and also ruled that the State could use the other acts evidence only for impeachment purposes if Appellant took the stand. *Page 3 
 {¶ 6} On November 16, 2006, the jury found Appellant guilty on all four counts. The trial court merged the two murder counts and sentenced Appellant to an indefinite term of fifteen years to life for the murder conviction, a three year consecutive term for tampering with the evidence, and five years of post release control. Appellant raises five assignments of error for review.
 II Assignment of Error One "THE TRIAL COURT VIOLATED THE DEFENDANT'S RIGHT TO REMAIN SILENT, HIS RIGHT TO A JURY TRIAL, AND HIS RIGHT TO COMPETENT COUNSEL. FURTHER, THE ACTS OF THE TRIAL COURT DENIED THE DEFENDANT DUE PROCESS."
 Assignment of Error Two "THE TRIAL COURT ERRED IN REFUSING TO INSTRUCT THE JURY TO (sic) VOLUNTARY MANSLAUGHTER."
 {¶ 7} In his first and second assignments of error, Appellant urges that the trial court restricted his right to argue, present evidence, and receive an instruction on voluntary manslaughter. Because these assignments of error are intertwined, we address them together.
 {¶ 8} Before trial, the trial court ruled that Appellant could not introduce evidence about Nicole's psychological background until it became relevant. The court explained this evidence would become relevant only if Appellant satisfied the objective component of voluntary manslaughter. Appellant avers that this ruling kept him from presenting evidence about Nicole's mental health, which *Page 4 
would have explained his actions and supported his defense of provocation. Appellant maintains that he and Nicole had a tumultuous history filled with bouts of her depression, but that they had worked hard to overcome these problems and were doing well. Appellant claims that Nicole's alleged suicide attempt caused him to stab her because "she was throwing away our lives." Accordingly, Appellant argues the trial court erred by not: (1) allowing him to discuss Nicole's mental health throughout the entire trial for context, and (2) instructing the jury on voluntary manslaughter. We disagree with both arguments.
 {¶ 9} "[T]he trial court retains the discretion to admit or exclude evidence." McPherson v. Goodyear Tire Rubber Co., 9th Dist. No. 21499,2003-Ohio-7190, at ¶ 7; see, also, State v. Sage (1987),31 Ohio St.3d 173, paragraph two of the syllabus. Unless the trial court has abused its discretion and Appellant has been materially prejudiced as a result, this Court will not interfere. State v. Nelson, 9th Dist. No. 04CA0001-M, 2004-Ohio-4967, at ¶ 8. Further, the trial court has discretion to determine whether the evidence presented at trial was sufficient to warrant a jury instruction. State v. Cherry, 9th Dist. No. 20771, 2002-Ohio-3738, at ¶ 69, citing State v. Lessin (1993),67 Ohio St.3d 487, 494. If the court strays from its sound discretion, the necessity of the instruction is a matter of law that we will review de novo. Id. However, we will not reach the issue of necessity unless we first find that the trial court abused its discretion in determining the sufficiency of the evidence. State v. Wolons (1989), *Page 5 44 Ohio St.3d 64, 68. Abuse of discretion connotes more than simply an error in judgment; the court must act in an unreasonable, arbitrary, or unconscionable manner. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219.
 {¶ 10} The voluntary manslaughter statute provides that:
 "No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another[.]" R.C. 2903.03(A).
In a murder case, a charge of voluntary manslaughter is appropriate when the evidence presented "would reasonably support both an acquittal on the charged crime of murder and a conviction for voluntary manslaughter." State v. Shane (1992), 63 Ohio St.3d 630, 632. This is because voluntary manslaughter is actually an inferior degree of murder.State v. Tyler (1990), 50 Ohio St.3d 24, 36. A defendant on trial for murder bears the burden of persuading the fact finder, by a preponderance of the evidence, that R.C. 2903.03(A) is applicable.State v. Rhodes (1992), 63 Ohio St.3d 613, 620. If the evidence does not allow the jury to reasonably reject the murder charge, the court need not give the instruction. Shane (1992), 63 Ohio St.3d at 633.
 {¶ 11} Initially, we note that the trial court allowed a great deal of information about Nicole's psychological background to emerge at trial. The jury heard testimony regarding Nicole's depression, medication, counseling sessions, and alleged suicidal behavior. Therefore, even though the trial court put some *Page 6 
restrictions on Appellant's presentation of this evidence, the record is replete with instances of its admission.
 {¶ 12} The record reflects that Appellant failed to satisfy the objective component of voluntary manslaughter. Under this component, the issue is, "whether the alleged provocation [Appellant suffered] is reasonably sufficient to bring on sudden passion or a fit of rage."State v. Mack (1998), 82 Ohio St.3d 198, 201. The provocation must be "sufficient to arouse the passions of an ordinary person beyond the power of his or her control." Shane, 63 Ohio St.3d at 635. In an attempt to meet this standard, Appellant claims that the sight of Nicole stabbing herself, when combined with a history of their previous problems, constituted sufficient provocation. Yet, "past incidents *** do not satisfy the test for reasonably sufficient provocation when there is sufficient time for cooling off." Mack, 82 Ohio St.3d at 201. It is only when a defendant satisfies the objective component of voluntary manslaughter that the court will consider the "emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time." Shane, 63 Ohio St.3d at 634, quotingState v. Deem (1988), 40 Ohio St.3d 205, paragraph five of the syllabus. Accordingly, Appellant had the burden of showing that at the moment he stabbed Nicole at least thirty-five times she had engaged in provocation sufficient to arouse the uncontrollable passion of an ordinary person.Shane, 63 Ohio St.3d at 635. We cannot conclude that the trial court abused its discretion in finding that a loved one's alleged *Page 7 
suicide is not sufficient provocation. See, e.g., State v. Elmore,111 Ohio St.3d 515, 2006-Ohio-6207 (making threats and screaming is not sufficient provocation); State v. Braden (2003), 98 Ohio St.3d 354,2003-Ohio-1325 (ending a romantic relationship is not sufficient provocation).
 {¶ 13} Similarly, we cannot find that the trial court abused its discretion by refusing to instruct the jury on voluntary manslaughter. "When reasonably sufficient evidence of provocation has not been presented, no jury instruction on voluntary manslaughter should be given." Shane, 63 Ohio St.3d at 638. The evidence at trial and the gruesome details of Nicole's death do not support a voluntary manslaughter instruction. See Braden, supra (shooting one victim five times and the other in the back of the head demonstrated purposeful killing and vitiated the need for a manslaughter instruction); State v.Carter (2000), 89 Ohio St.3d 593, 602 (stabbing victim eighteen times fully supported purposeful killing and request for manslaughter instruction was properly denied). Consequently, Appellant's first and second assignments of error are overruled.
 Assignment of Error Three "THE TRIAL COURT ABUSED ITS DISCRETION BY ALLOWING THE STATE TO INTRODUCE PRIOR BAD ACTS AS EVIDENCE PURSUANT TO EVIDENCE RULE 403."
 {¶ 14} Appellant argues that the trial court erred in permitting evidence of his prior bad acts. Appellant insists that the trial court should have excluded evidence regarding an incident in his junior year of high school. During that *Page 8 
incident, Appellant told school officials that he had been kidnapped to avoid punishment for sneaking out of school. Appellant vividly described his kidnappers and only recanted his story after the police and school responded to the false threat. The State filed a notice of intent to introduce this prior act. In a pretrial conference, the trial court ruled that if Appellant testified the State could cross-examine Appellant on the prior act evidence. However, Appellant's counsel decided to introduce the evidence in his opening statement and in his direct examination of Appellant.
 {¶ 15} Once a defendant chooses to raise the subject of a pretrial motion on his own, he cannot later claim that it was error to admit it as evidence. State v. Neville (Nov. 17 1998), 7th Dist. No. 235, at *11-12; State v. Leslie (1984), 14 Ohio App.3d 343, 344 ("[R]egardless of whether the trial court ruled upon appellant's motion in limine prior to trial, appellant waived his objection to the admittance of his prior criminal record when he admitted this evidence upon direct examination."). Appellant chose to raise his prior bad act first by discussing it during opening statements, taking the stand, and raising it on direct examination. He did not wait for the State to introduce the evidence during cross-examination and object to the questioning, or otherwise preserve the issue for appeal. As such, Appellant cannot now claim that it was error to admit this evidence. It is true that the choice to raise damaging evidence first is an acceptable trial strategy that a defendant can use to enhance his credibility. See State v.Gott (Dec. 22, 1993), 9th *Page 9 
Dist. No. 93CA005560, at *8 (noting that taking the sting out of an anticipated line of questioning is sound trial strategy). However, this strategy will result in a waiver of the issue on appeal. Appellant's third assignment of error lacks merit.
 Assignment of Error Four "THE DEFENDANT'S CONVICTION MUST BE OVERTURNED IN THAT HIS TRIAL COUNSEL WAS INEFFECTIVE."
 {¶ 16} Appellant argues that his trial counsel was ineffective because counsel made a very brief closing argument, raised prior bad act evidence before the State, did not object to certain testimony, and did not seek to remove the trial judge. Appellant does not specify which of his three trial attorneys he believes to be ineffective, so we treat Appellant's argument as applying to all three.
 {¶ 17} The Sixth Amendment of the United States Constitution guarantees a criminal defendant the effective assistance of counsel.McMann v. Richardson (1970), 397 U.S. 759, 771. To prove an ineffective assistance claim, Appellant must show that: (1) counsel's performance was deficient to the extent that "counsel was not functioning as the `counsel' guaranteed by the Sixth Amendment [,]" and (2) "the deficient performance prejudiced the defense." Strickland v. Washington (1984),466 U.S. 668, 687. To demonstrate prejudice, the defendant must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the *Page 10 
judgment of a criminal proceeding if the error had no effect on the judgment." Strickland, 466 U.S. at 691. Furthermore, the Court need not address both Strickland prongs if Appellant fails to prove either one.State v. Ray, 9th Dist. No. 22459, 2005-Ohio-4941, at ¶ 10. Accordingly, we begin with the prejudice prong.
 {¶ 18} The length of a closing argument and the decisions whether or not to introduce unfavorable evidence and to object are matters of trial strategy. See State v. Maurer (1984), 15 Ohio St.3d 239, 269 (closing arguments are not evidence); State v. Smith (2000), 89 Ohio St.3d 323,335 (choice to forgo closing argument was acceptable trial strategy);Gott, supra, at *8 (introducing unfavorable evidence first is trial a strategy); State v. Taylor, 9th Dist. No. 01CA007945, 2002-Ohio-6992, at ¶ 76 (finding that counsel's failure to object is within the realm of trial tactics). As we have previously held, "debatable trial tactics and strategies do not constitute [ineffective] assistance." (Quotations omitted.) State v. Clayton (1980), 62 Ohio St.2d 45, 49. We have reviewed the record and find that counsels' strategic actions did not prejudice Appellant. Even if we assume that Appellant's counsels erred, the record reflects that: (1) Appellant admitted to stabbing Nicole thirty-five times; (2) Nicole, a 5'4" woman, attempted to pull away from Appellant, her 6'3" husband, as he attacked her; (3) after the attack Appellant hid his bloody clothes and the murder weapon in a dumpster; and (4) Appellant initially lied to police by blaming two black men for Nicole's death. Based on all the evidence presented, we cannot say that counsel's *Page 11 
actions caused the result in Appellant's trial. See Bradley, paragraph three of the syllabus.
 {¶ 19} Lastly, nothing in the record supports Appellant's claim that the trial judge warranted removal. In the absence of some bias or prejudice, trial counsel has no duty to seek recusal. See State v.Coleman (Oct. 12, 1994), 9th Dist. No. CIV.A. 2305-M, at *1. Therefore, Appellant's fourth assignment of error lacks merit.
 Assignment of Error Five "THE TRIAL COURT'S JUDGMENT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND IS UNSUPPORTED BY THE EVIDENCE."
 {¶ 20} Appellant argues that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. We disagree.
 {¶ 21} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review *Page 12 
the evidence in a light most favorable to the prosecution. State v.Jenks (1991), 61 Ohio St.3d 259, 279. Furthermore:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus; see, also, Thompkins, 78 Ohio St.3d at 386.
 {¶ 22} In State v. Roberts, this Court explained that "sufficiency is required to take a case to the jury[.] *** Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2. (Emphasis omitted). Accordingly, we address Appellant's challenge to the weight of the evidence first, as it is dispositive of his claim of sufficiency.
 {¶ 23} In determining whether a conviction is against the manifest weight of the evidence an appellate court:
 "[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. Thompkins, 78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the *Page 13 
conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983),20 Ohio App.3d 172, 175; see, also, Otten, 33 Ohio App.3d at 340.
 {¶ 24} Appellant claims that there was not enough evidence for the jury to conclude that he intended to murder Nicole. Yet, the record supports that finding. It is difficult to imagine a scenario in which a person could stab another over thirty times and not intend to kill that person. Although Appellant testified that Nicole stabbed herself first, the jury had no obligation to believe him. The evidence showed that Appellant and Nicole were suffering financially and that Appellant missed work every time Nicole did not want to go to her job. The evidence showed that on the night Appellant murdered Nicole she went to bed early while he remained downstairs. Appellant testified that Nicole never came downstairs and that when he went upstairs to check on her a few times, she did not have a knife. Appellant could not explain how a knife found its way into the upstairs bedroom. Nor could the police ever find the knife after Appellant disposed of it and his bloody clothes to hide what he had done. From this and other evidence, we cannot conclude that the jury clearly lost its way. See Otten, 33 Ohio App.3d at 340. Appellant's fifth assignment of error is overruled. *Page 14 
 III {¶ 25} Appellant's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
 Costs taxed to Appellant. *Page 15 
 SLABY, P. J., CARR, J., CONCUR. *Page 1