[Cite as *State v. Tyson*, 2013-Ohio-3540.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

STATE OF OHIO,                                  :

    Plaintiff-Appellee,                    :
                                     Case No. 12CA3343

    v.                                     :

                                       DECISION AND
DENNIS J. TYSON,                                :    JUDGMENT ENTRY

    Defendant-Appellant.                   :    RELEASED 08/09/2013

APPEARANCES:

Aaron M. McHenry, Benson, McHenry & Sesser, LLC, Chillicothe, Ohio, for Defendant-Appellant.

Matthew S. Schmidt, Ross County Prosecuting Attorney, and Jeffrey C. Marks, Ross County Assistant Prosecuting Attorney, Chillicothe, Ohio, for Plaintiff-Appellee.

Hoover, J.

{¶ 1} Defendant-appellant, Dennis J. Tyson, appeals his conviction in the Ross County Common Pleas Court for assault on a corrections officer. Appellant contends that the evidence introduced at trial is insufficient to support his conviction, or alternatively that the conviction is against the manifest weight of the evidence. We disagree, because after viewing the evidence in a light most favorable to the prosecution, we find that any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Further, a review of the entire record fails to persuade us that the jury lost its way or created a manifest miscarriage of justice. Appellant next contends that he was afforded ineffective assistance of counsel. We disagree. The complained-of actions were part of a reasonable trial strategy. Moreover, even if the actions of appellant's counsel were unreasonable, they were not so prejudicial so as to

deprive appellant a fair trial. Accordingly, we overrule appellant's assignments of error and affirm the judgment of the trial court.

{¶ 2} A review of the record reveals the following events. Captain Josh Wells, an employee of the department of rehabilitation and corrections, alleged that during an altercation in the Chillicothe Correctional Institution chow hall, appellant-inmate punched him in the left side of his face. Appellant was charged with felonious assault in violation of R.C. 2903.13. He pled not guilty and, following a jury trial, was convicted and sentenced to a nine (9) month prison term to be served consecutively with a prison term imposed upon him in a prior case. Appellant timely appealed, raising two assignments of error.

First Assignment of Error:

> THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW TO CONVICT DENNIS TYSON OF FELONIOUS ASSAULT; OR IN THE ALTERNATIVE, THE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

Second Assignment of Error:

> DENNIS TYSON WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT TO THE CONSTITUTION AND COMPARABLE PROVISIONS OF OHIO'S CONSTITUTION.

{¶ 3} In his first assignment of error, appellant argues that his conviction is based on insufficient evidence and is against the manifest weight of the evidence.

{¶ 4} The "arguments concerning the 'sufficiency' and 'manifest weight' of the evidence present two distinct legal concepts." *State v. Davis*, 4th Dist. No. 12CA3336, 2013-Ohio-1504, ¶ 12. "When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt." *Id*. "The standard of review is whether, after

viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt." *Id.*, citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶ 5}  Therefore, when we review a sufficiency of the evidence claim in a criminal case, we review the evidence in a light most favorable to the prosecution.  *State v. Hill,* 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); *State v. Grant,* 67 Ohio St.3d 465, 477, 620 N.E.2d 50 (1993).  A reviewing court will not overturn a conviction on a sufficiency of the evidence claim unless reasonable minds could not reach the conclusion the trier of fact did.  *State v. Tibbetts,* 92 Ohio St.3d 146, 162, 749 N.E.2d 226 (2001); *State v. Treesh,* 90 Ohio St.3d 460, 484, 739 N.E.2d 749 (2001).

{¶ 6}  "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." *State v. Topping*, 4th Dist. No. 11CA6, 2012-Ohio-5617, ¶ 60.  "When an appellate court considers a claim that a conviction is against the manifest weight of the evidence, the court must dutifully examine the entire record, weigh the evidence, and consider the credibility of witnesses." *Id*.  The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve.  *E.g., State v. Issa,* 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. DeHass,* 10 Ohio St .2d 230, 39 O.O.2d 366, 227 N.E.2d 212 (1967), paragraph one of the syllabus; *State v. Murphy,* 4th Dist. No. 07CA2953, 2008–Ohio–1744, ¶ 31.

{¶ 7} "Once the reviewing court finishes its examination, the court may reverse the judgment of conviction only if it appears that the fact-finder, when resolving the conflicts in evidence, clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Citations omitted.) *Davis*, 2013-Ohio-1504 at ¶ 14. "A reviewing court should find a conviction against the manifest weight of the evidence only in the exceptional case in which the evidence weighs heavily against the conviction." (Citations omitted.) *Id*. at ¶ 15.

{¶ 8} Appellant was convicted of assault against a corrections officer in violation of R.C. 2903.13, which provides that no person incarcerated in a state correctional institution shall knowingly cause or attempt to cause physical harm to an employee of the department of rehabilitation and correction on the grounds of a state correctional institution.[1] "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶ 9} Wells testified that he was monitoring the chow hall of the Chillicothe Correctional Institution on the morning of January 15, 2011. Wells observed the appellant in the chow hall, approached appellant, and questioned appellant regarding his authorization to be admitted for early lunch. Wells then directed appellant to take a seat at a dining table near a telephone in the chow hall. Wells then called appellant's dormitory officer to inquire whether

---

[1] When appellant was convicted, the elements of the crime of assault on a corrections officer were found under R.C. 2903.13(C)(2)(a). R.C. 2903.13 was amended effective March 22, 2013. Under the amended version of the statute, the elements are identical but can be found under R.C. 2903.13(C)(3)(a).

appellant had been let out early for chow. The dormitory officer reported that appellant was not authorized to leave early for lunch.

{¶ 10} Wells then contends that he instructed the appellant, more than once, to report to "Post Five" for an interview. Wells said that the appellant stared at him, shook his head, and laughed. After ignoring the order several times, Wells testified that he placed his hand on appellant's arm and said, "come on lets go," and was going to escort appellant to Post Five. At that time, Wells said that the appellant stood up, took a step, and struck him in the left side of his face.

{¶ 11} Wells testified that the force of the punch spun him around, and by the time he gained his composure, other officers and employees in the area had already secured the appellant. The punch allegedly caused minor swelling of Wells' face and a small laceration on the inside of Wells' mouth.

{¶ 12} Lieutenant James Ball testified similarly to Wells. Ball testified that he was in the immediate location of the appellant and Wells when the offense occurred. Ball observed Wells order appellant to Post Five two separate times. On the third order, Ball testified that the appellant stood up, that Wells took him by the arm to escort him, and that the appellant then turned and punched Wells in the face. After observing the punch, Ball testified that he and two other employees secured appellant.

{¶ 13} Jeremiah Shoemaker, a Correctional Food Service Manager at the prison also witnessed the incident between Wells and the appellant. Shoemaker testified that Wells ordered the appellant to report to Post Five. After appellant refused to report to Post Five, Shoemaker observed Wells take the appellant by the arm and again order him to report to Post Five.

Shoemaker then testified that the appellant stood up and punched Wells in the face. After the punch, Shoemaker along with other officers in the area intervened and secured the appellant.

{¶ 14} Corrections Officer George Quinn also observed the incident. Quinn testified that Wells placed his hand on the shoulder of appellant in an attempt to escort him to the Captain's Complex. At that time, he observed the appellant stand up and punch Wells with his fist. Quinn then responded and helped to secure the appellant.

{¶ 15} Appellant testified on his behalf and denied ever striking or attempting to strike Wells. Appellant testified that he was not feeling well on the day of the altercation and that he believed he was having stroke-like symptoms. Appellant claims that he received permission from the dormitory officer to visit the infirmary. Appellant contends that when he went to the infirmary he could not be seen immediately, and was instructed to go eat lunch and to return to the infirmary afterwards.

{¶ 16} While in line at the chow hall, appellant testified that he was approached by Wells who inquired where he had come from, and that he explained to Wells that he had come from the infirmary.

{¶ 17} Appellant testified that Wells did instruct him to report to Post Five, and that Quinn and Shoemaker were nearby. Appellant claims that after being instructed to report to Post Five he stood up and asked Wells if he could eat first. He also testified that he nervously smirked at Wells. Appellant claims that Wells then placed him in an arm bar and turned him towards the exit of the chow hall. Appellant testified that as he was turned, Shoemaker tackled him without provocation. Appellant claims that the force of the tackle threw him and Wells to the ground.

{¶ 18} At trial, the defense also called Corrections Officers James Wilson and Chris Horsley as witnesses. The two corrections officers had submitted incident reports of the altercation. Both testified that they independently wrote their respective reports, but defense counsel pointed out that the reports, along with the incident report of Quinn, were nearly identical. Throughout the course of trial it was apparent that defense counsel attempted to demonstrate a cover-up or conspiracy among the various prison employees.

{¶ 19} Upon a review of the record, we find that the evidence showed that a rational trier of fact could find the essential elements of the offense proven beyond a reasonable doubt. The fact that the appellant was incarcerated in a state correctional institution, that the assault took place on the grounds of a state correctional institution, and that the victim was an employee of the department of rehabilitation and corrections were not contested. Furthermore, there was evidence that appellant knowingly caused physical harm to Wells by punching him in the face. Wells along with three additional witnesses testified to the punch thrown by appellant. Viewed in the light most favorable to the prosecution, the evidence is sufficient to sustain a conviction of assault.

{¶ 20} We next examine appellant's claim that his conviction was against the manifest weight of the evidence. Appellant's argument is one of credibility. Three witnesses testified that they saw appellant strike Wells. Appellant, on the other hand, denies striking Wells and instead suggests that any harm was "accidently caused in the scuffle." Appellant also contends that the state's evidence is unreliable because the prison employees allegedly met and verified their version of the events before writing their incident reports and before giving their testimony.

{¶ 21} In a claim that the verdict is against the manifest weight of the evidence, "[w]e leave the role of determining the rational persuasiveness of two competing versions of the events to the jury." *State v. Cooper*, 170 Ohio App.3d 418, 2007-Ohio-1186, 867 N.E.2d 493, ¶ 28 (4th Dist.). "The weight to be given evidence and the credibility to be afforded to witnesses' testimony are issues to be determined by the trier of fact." *Id*. at ¶ 17, citing *State v. Dye*, 82 Ohio St.3d 323, 329, 695 N.E.2d 763 (1998) and *State v. Frazier*, 73 Ohio St.3d 323, 339, 652 N.E.2d 1000 (1995). "The jury 'is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of proffered testimony.' " *Id*., quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273 (1984). " 'When conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the jury believed the prosecution testimony.' " *Id*., quoting *State v. Mason*, 9th Dist. No. 21397, 2003-Ohio-5785, ¶ 17.

{¶ 22} In the case sub judice, the jury was faced with opposing versions of the events. As the triers of fact, they were free to believe all or part of any witnesses' testimony. Apparently they found the state's version of the events more credible than appellant's, and they were free to do so. This court may reverse a conviction and order a new trial only in the exceptional case where the evidence weighs heavily in favor of the defendant and where it is clear that the jury lost its way or created a manifest miscarriage of justice. This is not such a case. Accordingly, appellant's conviction is not against the manifest weight of the evidence and his first assignment of error is overruled.

{¶ 23} In his second assignment of error, appellant contends that he received ineffective assistance of counsel. Appellant claims ineffective assistance for the following reasons: (1) trial

counsel introduced his prior conviction for murder; and (2) trial counsel failed to object to hearsay evidence.

{¶ 24} "In Ohio, a properly licensed attorney is presumed competent and the appellant bears the burden to establish counsel's ineffectiveness." *State v. Norman*, 4th Dist. Nos. 08CA3059 & 08CA3066, 2009-Ohio-5458, ¶ 65. To establish constitutionally ineffective assistance of counsel, appellant must show (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense and deprived him of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Issa*, 93 Ohio St.3d at 67, 752 N.E.2d 904; *State v. Goff*, 82 Ohio St.3d 123, 139, 694 N.E.2d 916 (1998). "In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation. To show prejudice, the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 95. "Failure to establish either element is fatal to the claim." *State v. Jones*, 4th Dist. No. 06CA3116, 2008-Ohio-968, ¶ 14.

{¶ 25} In considering appellant's arguments, we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland* at 689. Moreover, "the strategic decision of a trial attorney will not form the basis of a claim of ineffective assistance of counsel, even if there may have been a better strategy available." *State v. Jackson*, 4th Dist. No. 11CA20, 2012-Ohio-6276, ¶ 56, quoting *State v. Komora*, 11th Dist. No. 96-G-1994, 1997 WL 184758, *3 (Apr. 4, 1997), in turn citing *State v. Clayton*, 62 Ohio St.2d 45, 49, 402 N.E.2d 1189 (1980).

{¶ 26} Appellant contends that his trial counsel should not have asked him on direct examination about his prior conviction of murder. Appellant argues that information of the prior conviction was not necessary to prove an element of defense, or to disprove an element of the state's case; was highly prejudicial; and would have been objectionable if introduced by the state.

{¶ 27} We find that asking appellant about his prior murder conviction was a reasonable strategic decision. Following voir dire,[2] but prior to opening statements, the trial court asked defense counsel the following question: "It's my understanding Ms. Davis that you told the jurors about your client's previous murder conviction as part of trial strategy to leave open the option of calling your client to the stand if you decide to do so, is that correct?" Defense counsel responded, "[t]hat is correct sir." Therefore, appellant's trial counsel knew that the state would probably be allowed to introduce the murder conviction during appellant's cross-examination. *See* Evid.R. 609; *State v. Gott*, 9th Dist. No. 93CA005560, 1993 WL 539595, \*7 (Dec. 22, 1993).

{¶ 28} Rather than allow the state to introduce the evidence, appellant's trial counsel asked appellant the following question about his prior murder conviction on direct examination:

Ms. Davis: Let's get this out of the way right now. You have a conviction for murder, is that correct?

Mr. Tyson: I do.

Ms. Davis: And that was from what year?

---

[2] The record does not contain a transcript of voir dire. The trial transcript begins immediately following voir dire.

Mr. Tyson: 1990.

Ms. Davis:  And that was in what county?

Mr. Tyson:  Hamilton County.

Ms. Davis:  And what was the sentence that was imposed upon you?

Mr. Tyson:  15 years to life.

" '[T]he choice to raise damaging evidence first is an acceptable trial strategy that a defendant can use to enhance his credibility.' " *Jackson*, 2012-Ohio-6276 at ¶ 61, quoting *State v. Smith*, 9th Dist. No. 23542, 2007-Ohio-5119, ¶ 15.  It is clear from the record that appellant's trial counsel chose to raise the prior conviction first as part of a trial strategy to diminish the effects of the state raising it on cross-examination.  *Id.*; *see also Gott* at *8 ("[T]aking the sting out of the prosecution's anticipated line of questioning would clearly constitute sound trial strategy."). Therefore, appellant's trial counsel engaged in reasonable trial strategy, and we cannot find ineffective assistance on the basis that trial counsel should have avoided the prior murder conviction.

{¶ 29}  Next, appellant argues that he received ineffective assistance of counsel because his trial attorney "failed to object to hearsay evidence on a number of occasions that tended to show that [he] did not have permission to be in the chow hall on the day in question."  Appellant argues that such evidence was prejudicial because it caused the jury to believe that he "was defying prison rules and more likely to commit the charged offense."

{¶ 30}  " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Evid.R.

801(C). Furthermore, "[h]earsay is not admissible except as otherwise provided by [law or rule]." Evid.R. 802.

{¶ 31} While appellant argues that his trial counsel failed to object to hearsay testimony on "a number of occasions," his brief only points out one instance of which alleged hearsay testimony was admitted without objection. In particular, appellant argues that Wells' testimony that the dormitory officer told him that appellant was not released to the infirmary was inadmissible hearsay. The exact testimony was as follows:

Mr. Clagg: So once you made contact with him, what happened next?

Captain Wells: I questioned him on the reason why, and he made the statement well they let me out to go to medical. So I asked him to sit down at one of the dining hall tables by the phone, and I said here if the officer let you out, I'll go ahead and let you eat, in the meantime you can sit down at the table. I called the dormitory officer and asked him, did you let out inmate Tyson early for chow for any reason, he said no sir I did not let him out * * *So when I talked to the dormitory officer, he says no I did not intentionally let him out for any reason, nobody called for him * * * .

{¶ 32} "[F]ailure to object, standing alone, is insufficient to sustain a claim of ineffective assistance of counsel. Furthermore, a failure to object may be justified solely as a tactical decision." (Citations omitted.) *State v. Bennett*, 11th Dist. No. 2002-A-0020, 2005-Ohio-1567, ¶ 70; *see also State v. Leonard*, 4th Dist. No. 08CA24, 2009-Ohio-6191, ¶ 65-67, and *State v. Roby*, 3rd Dist. No. 12-09-09, 2010-Ohio-1498, ¶ 44. Here, we believe that not objecting to Wells' testimony constituted reasonable trial strategy.

{¶ 33} In this case, appellant's trial counsel had to attack the credibility of Wells; i.e. in order for appellant to have any chance of success the jury had to disbelieve the testimony of Wells and the other state witnesses. By not objecting to Wells' testimony, appellant's trial counsel was able to elicit, on cross-examination, a possible explanation as to why the dormitory officer had not released appellant to the infirmary. Specifically, on cross-examination appellant's counsel got Wells to admit that he did not confirm whether the dormitory officer he spoke with was actually present for the entire period of time that appellant may have received permission to go to the infirmary.

{¶ 34} Finally, even if we were to find that appellant's trial counsel erred by not objecting to the alleged hearsay statement, we could not find that the error was prejudicial to the extent that it deprived appellant of a fair trial. The complained of testimony relates to whether appellant was authorized to be in the chow hall on the date of the incident; but that fact has no bearing on the assault charge brought against appellant. The contested element of this case was whether appellant knowingly caused physical harm to a corrections employee. The state provided overwhelming evidence that appellant had in fact stuck Wells. Appellant seems to argue that by permitting testimony that appellant was a rule breaker, the jury then concluded that he must also be guilty of the assault charge. " 'Speculation regarding the prejudicial effects of counsel's performance will not establish ineffective assistance of counsel.' " *Leonard* at ¶ 68, quoting *State v. Cromartie*, 9th Dist. No. 06CA0107-M, 2008-Ohio-273, ¶ 25. Therefore, appellant cannot demonstrate that he was deprived of a fair trial, a trial whose result is unreliable, because of the hearsay-related issues.

{¶ 35} Accordingly, we find no merit in appellant's ineffective assistance arguments, and overrule his second assignment of error. Having overruled both of appellant's assignments of error for the reasons set forth above, we affirm the judgment of the trial court.

JUDGMENT AFFIRMED.

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED.  Appellant shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court.  If a stay is continued by this entry, it will terminate at the earliest of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to the expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. and Abele, J.:  Concur in Judgment and Opinion.

For the Court

By:_____
            Marie Hoover, Judge


**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.